## Root *versus* The Commonwealth.

1. The mere user of a way by the public for the space of twenty-one years will not vest a title in them thereto by prescription, unless the user be adverse and under claim of right.

2. Where such user is with the knowledge and acquiescence of the owner of the land traversed, and is under his leave and favor, by his permission, and at his will, no title by prescription can arise.

[Root *v.* The Commonwealth.]

3. The owner of land on the bank of a river established a ferry from shore to shore, and in order to afford an approach to and from said ferry opened a lane through his land which he constantly kept in repair. The public used said lane in order to approach to and from said ferry for more than twenty-one years. Afterwards the owner ceased to run the ferry and barred up the lane. Upon his being indicted in consequence for obstructing a highway, *Held,* that the lane had been used by the public by invitation or permission of the defendant only, that this was not such a user as vested a right by prescription thereto in them, and that, therefore, the defendant was not guilty of the offense charged against him.

4. It is not error on the part of the court to answer points presented by the commonwealth in criminal cases where no writ of error lies on the part of the commonwealth. The court is not bound to answer such points, but may, if it pleases, do so. If it does, the points and answers become a part of the charge.

May 25th 1881. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

ERROR to the Court of Quarter Sessions of *Warren county :* Of May Term 1881, No. 67.

This was an indictment against Perry and Daniel Root for obstructing a highway. On the trial before WETMORE, P. J., the following facts appeared in evidence : In 1842 one Benjamin Tome was the owner of a tract of land on the eastern shore of the Allegheny river. A public road ran through this tract along the bank of the river. The tract on the opposite or western shore of the river was owned by one Webb. A public road ran also through Webb's tract along the river bank. At one point there was a ford which travelers who wished to pass from one side of the river to the other were in the habit of using.

Some time in 1842 the public road on the eastern bank of the river was shifted inland and eastwardly some forty or fifty rods and then ran parallel with the river. William Brown at this time occupied the portion of Tome's tract lying between the old and new roads, but whether with or without the owner's permission did not appear. Shortly after the shifting of the location of the road, Brown laid out the land or highway in dispute through the land occupied by him westwardly from the new road to the old ford in order to accommodate travelers wishing to use the ford. This lane ran past a barn which stood near the river bank. In 1843 Brown vacated the land occupied by him and the same was taken possession of by Benjamin Tome. In the course of that or the following year, said Tome, wishing to establish a ferry across the river at or near the old ford, contracted with Webb for a right to land on Webb's tract on the western shore of the river. Webb granted the right, and

the ferry was accordingly opened, Tome providing the boat and keeping open the lane laid out by Brown, so as to furnish access from the new road to the ferry. In 1845 Benjamin Tome conveyed his tract of land to George Tome, who, in 1849, laid out that portion of the lane between the barn and the river anew, locating it a few rods south of the former place of travel. Afterwards George Tome's title became, through divers mesne conveyances, vested in the defendants. From the time of the starting of the ferry in 1843 or 1844, up to the early part of the year 1880, it was regularly maintained by the owners of the Tome tract, including the defendants, except for a few months in 1866. During those few months the lane in question was barred up ; at all other times it was kept in order by defendant's and their predecessors in title, and left open so as to afford a free approach to and from the ferry. In the early part of 1880 defendants ceased to run the ferry and barred up the lane, whereupon the present proceedings were instituted.

The Commonwealth presented, *inter alia,* the following points :

2d. If the public have so used a roadway across the land now occupied by the defendants, to pass between the river ferry and the public road for twenty-one years, without protest or hindrance, they have acquired such a right as cannot be disturbed or questioned by the owner of the land. *Affirmed.* (First assignment of error.)

3d. To acquire such a right the user need not be claimed or exercised as exclusive ; it is enough that the owner permits it without objection or the assertion of his exclusive dominion over the *locus in quo,* for other uses or purposes. *Affirmed,* (Second assignment of error.)

6th. If the jury believed the road across the land of the defendants, between the ferry and the public road, substantially as now claimed, was used by the public as a highway for twenty-one years, by the invitation of the owners, or with their knowledge and approval, the law will presume a grant by said owners not afterwards revocable. *Affirmed.* (Fourth assignment of error.)

Verdict, guilty. Sentence, that the defendants each pay a fine of one dollar, and the costs of prosecution. Defendants thereupon took this writ, assigning for error, *inter alia,* the action of the court in affirming the Commonwealth's points as above.

*R. Brown,* for plaintiffs in error.—The public have derived no right to the highway in dispute by prescription. The evidence showed that it had been used by the public for no other

[Root v. The Commonwealth.]

purpose than an approach to defendant's private ferry. This was a mere matter of favor and courtesy by defendants and their predecessors in title, and was not such an adverse user as to vest rights in the public: Esling v. Williams, 10 Barr 126; Worrall v. Rhoads, 2 Whart. 427; Co. of Susquehanna v. Deans, 9 Cas. 131; Gowen v. Phila. Exchange Co., 5 W. & S. 141; Irwin v. Dixion, 9 Howard 10; Washburn on Easements and Servitudes 183; 3 Kent's Comm. 444.

The Commonwealth has no right to a bill of exceptions in such cases as the present. Hence it was error on the part of the court to answer the Commonwealth's points at all.

*Johnson, Lindsey* and *Parmlee*, for the Commonwealth.—There was no evidence that the public used the highway in question by the invitation, contract or consent of defendants, or their predecessors in title. There was evidence that the use was adverse, which would give a right to the public by prescription: Esling v. Williams, 10 Barr 126; Cooper v. Smith, 9 S. & R. 27; Worrall v. Rhoads, 2 Wh. 426; Garrett v. Jackson, 8 Harris 331; Okeson v. Patterson, 5 Cas. 22; Pierce v. Cloud, 6 Wr. 102; Plitt v. Fox, 7 Wr. 486; Demuth v. Amweg, 9 Norris 181; Newman v. Rutter, 8 Watts 51.

Mr. Justice TRUNKEY delivered the opinion of the court, June 20th 1881.

Prior to 1842 a public road had been opened on each bank of the river near its margin, and for about ten years a ford had been used by people who chose to cross from one road to the other, at or near the place of the ferry between the land of the defendants to the land of Webb. The road on the east bank of the river was vacated and another opened running in the same direction, about forty rods farther east. · Brown, who then occupied the land now owned by defendants, opened a lane from his barn out to this road, and the public passed over it and through an open field to the ford without hindrance. In 1843 or 1844, Tome, who succeeded Brown in occupancy, desiring to establish a ferry, contracted with Webb for a landing on the west side of the river; Webb gave the right of way for a landing and made and kept up the road from the landing to the public road, thirteen and one-half rods, for which he and his family were to be ferried across free of charge. This arrangement was carried out by Tome and his successors till the ferry was stopped shortly before the prosecution of the defendants. Tome put on the first ferry-boat at that place. In 1849 Tome made the part of the lane from the barn to the river, locating it a few rods south of the former place of travel. The lane varied

in width from sixteen feet to thirty. For a time in 1866 the ferry was stopped and the lane barred—the bars were taken away when the ferry was again started. Ten or twelve years ago the way near the landing was injured by a flood and the defendants moved the fence so as to make a passage. The fencing of the lane and keeping it in repair were by the occupants of the land. Neither time nor money was ever expended in its opening or improvement by the public. The foregoing facts are proved by the witnesses called by the Commonwealth.

At the date of the arrangement between Webb and Tome respecting the ferry, the public had not acquired any right of way. None of the parties had chartered or prescriptive rights to a ferry there. It may be, as alleged by the learned counsel for the Commonwealth, that every other man "had just as much right to ferry himself or his squaw across the river at that place as the occupant had, provided he paddled his own canoe;" but he had no right to go ashore without permission of the owner or occupant of the land. The right to the bed of a navigable river is presumed to belong to the Commonwealth; but she has no right in the adjoining lands which have been vested in citizens, other than by eminent domain. The owner of the soil has the right of landing on the banks of all navigable rivers. No person can of right land his ferry-boat on another's ground, without permission. Nor can the Commonwealth grant such right, except upon compensation being made to the land-owner. Cooper *v.* Smith, 9 S. & R. 26.

This was a private ferry, the landings and ways made, owned and kept in repair by the occupants of the land. The presumption is that the tenants acted by the consent or procurement of the landlord. No man had a right to go to that ferry except on the implied invitation of its owner. The owner wanted customers—he proposed to carry them across the river for a consideration, and those who went accepted his terms.

It is not claimed by the Commonwealth that the owner of the land dedicated an easement to the public, but she claims that the lane became a highway because of user, on the principle that "twenty-one years' adverse use of a way under claim of right is sufficient to authorize the presumption of a grant, and if the use was open and notorious in the ordinary manner, the owner would be presumed to know and acquiesce therein." This principle has been often repeated in cases where one man claims a way, that is, the right of going over another man's ground. A user will not give title unless it be adverse and under claim of right, nor when it appears it was not done with the knowledge and acquiescence of the owner, or when the way is used under leave or favor and by permission and at the will of the owner.

The presumption may be repelled by evidence which accounts for the possession or user without resorting to a title by grant or otherwise : Esling v. Williams, 10 Barr 126. If the use of the way by an individual is merely a permissive use, no presumption of grant will arise from lapse of time. In order to establish a way by user, the user must be adverse, not permissive : Demuth v. Amweg, 9 Nor. 181. Like principles generally apply when the easement is claimed as public : Gowen v. Phil. Exchange Co., 5 W. & S. 141. The use of ground in front of a warehouse, extending to the river, by the public and by the owner for such purposes as he desired, for more than thirty years continuously, gave the public no right against the will of the owner, for the use was not adverse to him, but by his consent. And it was not exclusive by the public, but in common with him for travel and entirely in him for several purposes of a private character : Irwin v. Dixion, 9 How. 10. From the nature of wharf property the access must be kept open for the convenience of the owner and his customers; but the property continues private. No length of time during which the property is so used, can deprive an owner of his title, nor give the community a right to abate the owner's fences over it as a nuisance on the ground that they have acquired a legal easement in it.

In this case the tenants could have used the lane just as they did for travel and teaming, whether it was a private or public road. It was the interest of the owner of the ferry to invite travelers by keeping an open way from the public road to the river and procuring the way from Webb from the river to the road on the west side. Without such convenience his ferry would have been worthless. The business of the ferry and its receipts were increased by leaving the way open when the river was frozen and when fordable. To have closed the way at such times would have driven the customers to ferries above or below when a ferry would be necessary. Hence, the invitation was held out and permission given. No one was a trespasser, no one was liable to an action for use of the lane or landings at any season of the year. Had the lane or landings got out of repair and the road commissioners been indicted for neglect of duty in suffering them to become impassable, it is probable that they would have discovered that the lane and landings were private property, and that neither the road commissioners, nor any other person, had ever done an act recognizing them as a public or township road.

The court was not bound to answer the points presented by counsel for the Commonwealth, but the mere fact of doing so was not error. When affirmed, they became a part of the charge.

As abstract propositions, those which were affirmed were substantially correct, yet without explanation some of them, we think, were well calculated to lead to an erroneous verdict. The jury were instructed that if the public have used a way as a highway " across the land now occupied by defendants, to pass between the river ferry and the public road for twenty-one years, without protest or hindrance, they have acquired such a right as cannot be disturbed or questioned by the owner of the land ;" that " to acquire such a right the user need not be claimed or exercised as exclusive, it is enough that the owner permits it without objection or the assertion of his exclusive dominion over the *locus in quo,* for other uses or purposes ;" and that " if the jury believed the roadway across the land of defendants, between the ferry and the public road, substantially as now claimed, was used by the public as a highway for twenty-one years, by the invitation of the owners, or with their knowledge and approval; the law will presume a grant by said owners not afterwards revocable."    Had the ferry been one in which the owner or tenant of the land had no interest, these propositions would have been fitting, but applied to the facts proved by the Commonwealth, to say nothing of the defendant's evidence, they were misleading.    By affirmance of the defendants' second point the jury were rightly instructed that the public would not acquire a right by user for twenty-one years unless under such circumstances of acquiescence as clearly indicated the owner's design to surrender control and donate the way to the exclusive use of the public. This availed nothing against the positive instruction that a user by the public as a highway of the road between the ferry and public road, for twenty-one years, by invitation of the owners, was an irrevocable legal presumption of a grant by the owners. If the owner invited the public to use the way he was not likely to protest against and hinder the use ; if he permitted the use he did not object; yet the jury were told that its use as a highway without hindrance or objection vested a right in the public which cannot be disturbed.    The propositions set forth in the first, second and fourth assignments of error either should have been refused or accompanied by remarks to the effect, that if the public for more than twenty-one years used the lane between the public road and a private ferry owned by the occupant of the land, under circumstances which showed it was permitted for the purpose of reaching the ferry, the public acquired no right of way ; that to vest such right the user should have been adverse to the owner, and not by his consent ; and if the jury believed the occupier or owner of the land opened a passage from the road to the river to his ferry and had obtained from the owner of the opposite shore, for a valuable considera-

tion, the right of landing and other necessary privileges, and that said passage was used by the public by invitation or permission of the owner of the ferry and the land, there was no such user as vested an easement, that such facts would repel the presumption of a grant arising from user for more than twenty-one years.

> Judgment reversed, and it is ordered that the record, together with the opinion of this court setting forth the causes of reversal, be remitted to the court of Quarter Sessions of Warren county, for further proceeding.