HOLLY ET AL. *v.* NEW YORK CENTRAL RD. CO.

(Decided December 12, 1929.)

Messrs. *Giblin & Giblin,* for plaintiffs.
Mr. *C. C. Handy,* and Messrs. *Wilson, Hahn &
Wilson,* for defendant.

FARR, J. The action below, instituted by William
N. Holly and others, was for an injunction to re-
quire the defendant New York Central Railroad
Company to remove certain obstructions in the way
of fences from what is claimed to be a farm crossing
on defendant's lines, and upon the issues joined in
the court below a judgment was entered in favor of
plaintiffs, from which an appeal was perfected in
this court.

The facts of importance here are as follows:

On December 19, 1851, Martin Sawyer conveyed,
without any reservations, to the Cleveland, Paines-
ville & Ashtabula Railroad Company, the predeces-
sor in title of the defendant herein, a strip of land
one hundred feet in width, for a right of way, which
extended east and west and separated Sawyer's two
hundred acre farm in Mentor township, Lake county,
into about equal north and south parts. Later Saw-
yer transferred the remainder of this tract of land
to his son, Orando Sawyer, and on October 14, 1897,
Orando Sawyer conveyed same to Charles M. Mix.
The plaintiffs here derive their title to the premises
involved from said Charles M. Mix. This right of
way remained the original width until about Decem-
ber 12, 1910, when Mix deeded to defendant's prede-
cessor in title a twenty-foot strip along the north
line of the original right of way. This deed of
conveyance contained the following reservation:

"This conveyance is made subject to the statutory right of the grantors to a farm crossing across the land hereby conveyed."

The original tract of land involved consisted, as above stated, of some two hundred acres in Mentor township; was bounded on the east by what was known as the Marsh road, and later as the Hopkins road, which extended in practically a northerly and southerly direction. Another public thoroughfare, known as Jackson street, extended approximately in an easterly and westerly direction, and intersected the Hopkins road, cutting through the south edge of the farm. Charles M. Mix allotted the remainder of said farm into small parcels abutting upon proposed thoroughfares. About fifteen hundred feet west of Hopkins road there was maintained by the railroad company a farm crossing for the convenience of Martin Sawyer, Orando Sawyer, and Charles M. Mix, which crossing was kept in repair by the railroad company, and had gates on each side thereof, which were also kept in repair by the railroad company. When the additional right of way was obtained in 1910, the railroad company moved its fence back to the north line of the new right of way and built a gate at the north side of said crossing, which crossing was used during all of said time for the ordinary farm purposes of transporting crops and machinery from one part of the farm to the other, and for the passage of live stock. There is one tier of lots between said road and the railroad track, said lots facing upon the southerly side of what is known as Brookside road and extending back to the railroad right of way. Brookside road has now become a public thoroughfare. It is

claimed that all lots owned by the several plaintiffs herein are situated north of the railroad, and either abut on Hopkins or Brookside roads or connect therewith. All of the lots abut upon public, proposed, or open thoroughfares, which connect either with Hopkins road or Jackson street. On the 24th day of August, 1927, the defendant company closed said farm crossing and erected a fence on each side thereof.

Two causes of action are set out in plaintiffs' petition, the *first* alleging title acquired by prescription, and the *second* claiming a right of way by necessity, and it is alleged that the closing of this crossing resulted in irreparable damage to plaintiffs and destroyed their means of ingress to and egress from their lands. The trial court held that the evidence adduced did not show title by prescription to a public crossing, and thereupon dismissed the first cause of action. As to the second, the court found that four of said plaintiffs failed to prove title to any of the lands involved, and ordered their names stricken from the petition, and then found further in favor of plaintiffs that they were entitled to a private right of way over the crossing, and granted a mandatory injunction in their favor against the defendant, directing the opening of said crossing and allowing a perpetual injunction against the obstruction of the same.

The foregoing is sufficient to disclose that the vital issue here is the right under the circumstances to close the farm crossing in question, and from the foregoing it becomes clear that the original right of way was granted to the railroad company, said company allowing to the then owner of the premises the

right to use a farm crossing, and which the successive owners of said premises did so use until the 24th day of August, 1927.

It was suggested in argument that Section 8858, General Code, as amended April 18, 1874, 71 Ohio Laws, 85, relating to "farm crossings," is of importance in this connection, in that the above statute invested the Sawyers and Mix with a right to such crossing, and that therefore a user could not ripen into title by prescription. However, the determining issue is that the farm crossing as located originally, and as later extended over the additional twenty feet, was prepared by and used with the knowledge and consent of the grantee of such right of way and its successor in title, and being that kind of permissive use, and one fully consented to by the grantee, it was the equivalent of a grant by such grantee to the grantor of the one hundred foot strip, and the crossing having been made or prepared by the Company, and exercised and enjoyed with the full knowledge and consent of the Company, the statute did not begin to run until said crossing ceased to be used for farm purposes, this being about the time of the allotment.

In 2 Washburn on Real Property (6th Ed.), Section 1257, it is said: "If, therefore, it can be shown that the enjoyment of the right or privilege claimed, during any part of the time in which it was said to have been gained by user, was by permission of the owner of the land, the idea of its being adverse, and as of right, and therefore an easement, is negatived." *Flora* v. *Carbean*, 38 N. Y., 111, and *Root* v. *Commonwealth*, 98 Pa., 170, 42 Am. Rep., 614.

In 2 Corpus Juris, page 122, paragraph 206, it is observed: "The principle is well settled that to

make a disseizin that will be the commencement of a new title, producing a change by which the estate is taken from the rightful owner and placed in the wrongdoer, the possession taken by the disseizor must be hostile or adverse in its character, importing a denial of the owner's title in the property claimed; otherwise, however open, notorious, constant, and long continued it may be, the owner's action will not be barred. The mere fact that the claimant has had possession of the land for the statutory period will not suffice to satisfy the rule requiring the disseizor's possession to be hostile. As was said by Chief Justice Marshall, 'It would shock that sense of right which must be felt equally by legislators and by judges, if a possession which was permissive, and entirely consistent with the title of another, should silently bar that title.' "

A recent leading case in Ohio is *Pennsylvania Rd. Co.* v. *Donovan,* also *Pennsylvania Rd. Co.* v. *Cunningham,* 111 Ohio St., 341, 145 N. E., 479, where it is held in the first proposition of the syllabus as follows: "1. An easement by prescription may be acquired by open, notorious, continuous, adverse use for a period of 21 years. Such use never ripens into a prescriptive right unless the use is adverse and not merely permissive."

In the opinion of Marshall, C. J., at page 350, it is said: "If the use is permissive no prescriptive rights can be predicated upon such use." And many cases are cited in support of that principle, among them *Pavey* v. *Vance,* 56 Ohio St., 162, 46 N. E., 898, and *Smith* v. *P., C., C. & St. L. Ry. Co.,* 5 C. C. (N. S.), 194, 16 C. D., 44.

Nor may this be a right of way by necessity for plaintiffs because the thoroughfares of the allotment

connect with the above named highways. Therefore, no title by prescription can be successfully claimed under the circumstances, nor a way by necessity, for the reason that it was a way by the consent and agreement of all parties connected with the transaction. Because there are already adequate means of ingress and egress, the rights of the former landowners in and to said crossing do not inure to these lot owners, so far as a farm crossing is concerned, for they do not need one, which was the original purpose, and the lot owners now seek to make another and different use than that of a farm crossing; they seek to make it a crossing for general use by the public. Since the amendment of the statute in 1874, the original having been passed in 1859, the landowners have had a statutory right of user, which could not operate to acquire a prescriptive title, nor does the testimony at the most show title by prescription. Parmlee, now 75 years of age, claims that he remembers the crossing back 72 years. He would then be three years of age, but this testimony is hardly sufficient to sustain title by prescription in the instant case. True, some kinds of permissive use may ripen into title by prescription, but not such as in the instant case, where the railroad company constructed and maintained the crossing, thereby practically keeping the crossing under its control, subject to the right of use by the farm owner. Nor can the rights of the lot owners rise any higher than those of their predecessors in title; and, such being the case, it follows that the finding must be for the defendant, and the petition be dismissed.

*Judgment accordingly.*

POLLOCK and ROBERTS, JJ., concur.