769 So.2d 28 (2000)
STATE of Louisiana
v.
Troy J. JONES.
No. 99-KA-0861.
Court of Appeal of Louisiana, Fourth Circuit.
June 21, 2000.
*32 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
J. Wilson Rambo, Louisiana Appellate Project, Monroe, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY, Judge PHILIP C. CIACCIO, Pro Tem.
KIRBY, Judge.

STATEMENT OF THE CASE
Defendant Troy J. Jones was charged by bill of information on March 7, 1996 with possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1).[1] Defendant pleaded not guilty at his May 20, 1997 arraignment. The trial court denied defendant's motion to suppress the evidence on June 30, 1997. Defendant was found guilty as charged on September 15, 1997, following trial by a twelve-person jury. The State filed a habitual offender bill of information on September 24, 1997, and defendant denied the allegations therein. The trial court denied defendant's motions for post judgment verdict of acquittal, motion in arrest of judgment, and motion for new trial. The trial court adjudicated defendant a third-felony habitual offender on January 7, 1998. On February 13, 1998, the trial court sentenced defendant to life imprisonment at hard labor, without benefit of probation or parole, with credit for time served; an amended minute entry from September 14, 1998 states that the sentence was without benefit of probation or suspension of sentence. On February 18, 1998, the trial court denied defendant's motion for reconsideration of sentence, and granted defendant's motion for appeal.

*33 FACTS
New Orleans Police Officer Randy Lewis testified that on July 26, 1995, he was working undercover purchasing narcotics from street-level dealers in the St. Bernard Housing Development, as part of a multi-agency "ATF (U.S. Treasury, Bureau of Alcohol, Tobacco and Firearms) Safe Home Task Force." He would drive through the housing development, waiting for persons to flag him down and offer to sell narcotics, while other officers working with him backed him up. The other officers would either arrest the sellers, or stop and identify them (for later arrest with a warrant), and release them.
As Officer Lewis drove in a riverbound direction on Gibson Street, near the intersection of Milton Street, he observed defendant standing on the uptown side of that street. Defendant signaled to the officer, and he stopped his car in the middle of the street. Defendant approached the passenger window and asked the officer what he wanted. When Officer Lewis replied that he wanted a twenty-dollar piece of crack cocaine, defendant pulled three individual plastic bags, each containing a "slab" of crack cocaine, which he offered to sell for $150 each. Officer Lewis said he did not have that much money, and informed defendant that he would try to obtain the money and return later. Officer Lewis said he had a hidden video camera pointed to catch anyone at the driver's side window, so it did not videotape defendant, who was at the passenger-side window.
Officer Lewis drove away, met with other officers, and decided to return and attempt to make some more purchases. He drove around the block and turned onto Milton Street, right off Gibson Street, where he was flagged down by two other males, who asked him what he wanted. Officer Lewis again replied that he wanted a twenty-dollar piece of crack cocaine. Whereupon the two males walked over to defendant, who was standing on the sidewalk, and Officer Lewis observed defendant pull out the slabs of crack, break off a piece, and give it to one of the males. One of the males gave the officer the piece of crack, and Officer Lewis gave him twenty dollars. Officer Lewis left the area, and other officers moved in to stop defendant and the other two males. Officer Lewis subsequently drove by, and radioed the other officers to confirm that they had the correct individuals.
New Orleans Police Officer Edgar Dunn, qualified by stipulation as an expert in the identification of cocaine, testified that he tested a sample of the substances in each of the three bags in evidence, and those samples were positive for cocaine.
New Orleans Police Officer Dwayne Scheuremann testified that on the date in question, he received information via radio that the three individuals who had participated in the sale to Officer Lewis were walking near some tennis courts in the 1400 block of Milton Street. Officer Scheuremann, along with an ATF agent and a DEA (Drug Enforcement Administration) agent, stopped the three men. Officer Scheuremann stated that, knowing of the violence associated with the drug trade, he conducted a pat-down search of defendant to ensure that he was not armed. He felt objects in defendant's front pants pocket which, based on his experience, he believed were consistent with crack cocaine. He also recovered $170 in currency and digital pager, all of which evidence he identified. Officer Scheuremann said Officer Lewis drove past them and positively identified defendant and the two others. Officer Scheuremann admitted he was not in visual contact with Officer Lewis during the drug transaction.
New Orleans Police Officer Raymond Veit testified that he was chosen to write all police reports and prepare applications for arrest warrants in connection with the overall undercover operation. He admitted that he was out of town on the date of the incidents at issue in the instant case. *34 Officer Veit said he prepared the police report based on facts gathered from the officers involved. He admitted that the report he wrote did not state that defendant alone had earlier approached Officer Lewis. However, he also said that he prepared the report in connection with the two other individuals for whom he did not seek an arrest warrant for distribution of cocaine. Defendant was arrested at the scene for possession with intent to distribute the cocaine found on his person. He said he did not seek an arrest warrant for defendant because defendant was not seen on the videotape he reviewed.
Alfred Hill testified that on the day in question he was waiting for a friend to come out of a store, and noticed defendant and another individual talking nearby. An individual drove up in a car, and asked him if he knew who "had something?" Byron Hall came towards the car, and the man in the car asked Hill to give Hall twenty dollars. Hall, who was on a bicycle, gave the man two rocks of crack cocaine. Hill said the man in the car was dissatisfied, and Hall gave the man back his twenty dollars. The man continued to ask for drugs, and Hill essentially told him that Hall was the only one around who could help him. So, the man called Hall back, and Hill again gave Hall the man's money. Hall rode up the street, and returned and gave the man the cocaine. The man told Hall he would be back, and left. Hill walked away, and police pulled up and jumped out of their vehicle. Hill said Hall threw something to the ground. Hill also said defendant was present. He said he did not see officers take anything from defendant. Hill admitted prior convictions from 1971 and 1975, respectively, for possession with intent to distribute drugs and possession of stolen property. He said he pleaded guilty to the charge related to the instant case. Hill admitted on cross examination that he could not say what police found on defendant's person, although he maintained that he could see defendant until police handcuffed him. He also admitted that defendant was in the same general area where Byron Hall was situated. When asked why Byron Hall could not testify, Hill said Hall had died of AIDS.
Byron Berry, an Orleans Parish Assistant District Attorney, testified that Alfred Hill and Byron Hill had been charged with distribution of cocaine; Hill pled guilty, and the case was dismissed against Hall after he died. He said he had been unable to locate the videotape from the case.
Officer Randy Lewis, recalled as a witness on rebuttal, testified that on the second occasion he drove down the street, the two individuals flagged him down, and he pulled over to the right-hand side of the street. He said defendant was standing on the right-hand side of the street, on the sidewalk, only feet from him, when the individual with the cast on his leg walked over to him. Officer Lewis saw defendant pull out the three packets of crack cocaine, break off a piece from one of them, and hand it to the individual with the cast on his leg. He denied ever making any solicitous gestures toward either defendant or the other two males. He admitted initiating the conversation with defendant, but only after defendant walked up to his vehicle.

ERRORS PATENT
A review of the record reveals two errors patent, both of which are rendered moot by the action necessary to remedy the error discussed in defendant's Pro Se Assignment of Error 1(C). First, defendant filed motions for post verdict judgment of acquittal and for arrest of judgment, prior to sentencing, which motions apparently were not disposed of prior to sentencing, as required by La. C.Cr.P. arts. 821(A) and 861, respectively. The failure to rule on these motions requires that defendant's sentence be vacated and the case remanded for resentencing. State v. Wilson, 96-251, pp. 6-7 (La.App. 5 Cir.1996), 683 So.2d 775, 777; see also State v. Brown, 620 So.2d 508, 512 (La. *35 App. 4 Cir.1993), writ denied, 625 So.2d 1062 (La.1993).
Second, the trial court initially sentenced defendant to life imprisonment without the benefit of parole or probation. An amended minute entry reflects that the sentence should have reflected that it was without benefit of probation or suspension of sentence. Defendant was sentenced pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), which provided at the time of defendant's arrest, and provides now, that such sentence be without the benefit of parole, probation or suspension of sentence. Thus, the sentence is illegally lenient in that it fails to deny the benefit of parole. See State v. Alexander, 98-1377, p. 3 (La. App. 4 Cir. 2/16/00), 753 So.2d 933, 936. However, where such sentencing error is favorable to defendant, and the State has not complained, the illegally lenient sentence cannot be corrected on appeal. Id.

ASSIGNMENTS OF ERROR
The assignments of error will not be considered in numerical order, as many of them are rendered moot by the resolution of the defendant's pro se assignment of error 1(C), infra.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the evidence is insufficient to support his conviction.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
To support a conviction for possession of a controlled dangerous substance with intent to distribute, the State *36 must prove that the defendant knowingly and intentionally possessed the contraband and that he did so with the intent to distribute it. State v. Smith, 94-1502, p. 3 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1081; La. R.S. 40:967(A)(1). Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1); State v. Scott, 99-0241, p. 7 (La.App. 4 Cir. 1/5/00), 752 So.2d 255, 259; State v. Hall, 98-0667, p. 14 (La.App. 4 Cir. 12/22/99), 750 So.2d 1105, 1112. Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/00), 751 So.2d 393, 397.
Defendant cites the testimony of Alfred Hill, who said he could see defendant until defendant was handcuffed, and at no time did he see police remove anything from defendant's person. He notes that Alfred Hill was a credible witness, in that Hill testified that he had never talked to defense counsel about the case, and in fact did not know why he had been brought to New Orleans from his place of incarceration in north Louisiana. Defendant asserts that Alfred Hill had no reason to lie for defendant. Defendant further argues that, without the videotape of the incident, the record is incomplete as to what happened that day.
Officer Lewis testified that defendant displayed three plastic bags to him, each containing a slab of cocaine. A short time later, Officer Lewis observed defendant break off a piece from one of the slabs and give it to Alfred Hill, who in turn gave it to Officer Lewis. Officer Scheuremann stopped defendant immediately after the sale, and found the three plastic bags of cocaine on defendant's person, along with $170.
Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that defendant possessed the cocaine with the specific intent to distribute it.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant claims the trial court erred in denying his motion to suppress the evidence, averring that the police officers did not have either reasonable suspicion to stop defendant or probable cause to arrest him when they approached him.
Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 5 (La.7/2/99), 750 So.2d 893, 898, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193.
La. C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances *37 of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 416, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162.
The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 916; State v. Mitchell, 97-2774, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 2 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La. App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
Officer Lewis testified that he observed defendant break off a piece of crack cocaine from a slab and give it to Alfred Hill, one of the two individuals who came up to his vehicle the second time he drove through the area. Hill then handed the piece of cocaine to Officer Lewis. Officer Lewis drove off and radioed to Officer Scheuremann a description of the three individuals who had just participated in the sale of cocaine to him.
Officer Scheuremann, along with two federal agents, were working in concert with Officer Lewis, stopping suspected narcotics sellers after Officer Lewis had made purchases. Thus, when Officer Scheuremann and the federal agents were directed by Officer Lewis to stop defendant and the two others, Officer Scheuremann and the agents had a reasonable suspicion to believe that the three had participated in a sale of narcotics to Officer Lewis.
Presumably, Officer Lewis did not specifically inform Officer Scheuremann of all the facts he knew. However, Officer Lewis had knowledge of these facts, and this knowledge should be imputed to Officer Scheuremann and the two federal agents. As the Louisiana Supreme Court wrote in State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881, "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action," citing Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996), quoting Scott v. U.S., 436 U.S. 128, 138, 98 S.Ct. 1717, 1723-1724, 56 L.Ed.2d 168 (1978). Officer Lewis had, at the very least, reasonable suspicion to stop the men. He *38 directed other personnel to stop the men, who did so, correctly believing that Officer Lewis had sufficient articulable facts within his knowledge to justify the stop. Thus, the stop was lawful.
Defendant argues that even if the stop was lawful, Officer Scheuremann's frisk of him was not.
If a police officer stops a person whom he reasonably suspects is committing, has committed, or is about to commit a crime, pursuant to La. C.Cr.P. art. 215.1(A), and reasonably suspects he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon. La. C.Cr.P. art. 215.1(B). If he reasonably suspects that the person possesses a dangerous weapon, he may search the person. La. C.Cr.P. art. 215.1(B); State v. Curtis, 96-1408, pp. 2-3 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1289. "The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger." State v. Williams, 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144, quoting State v. Smith, 94-1502 p. 5 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1082. As noted by this court in State v. Denis, 96-0956 (La.App. 4 Cir. 3/19/97), 691 So.2d 1295, writ denied, 97-1006 (La.6/20/97), 695 So.2d 1352:
While it is true that an officer is never justified in conducting a pat-down for weapons unless the original detention itself was justified, a lawful detention for questioning does not necessarily give the officer the authority to conduct a pat-down for weapons. Even after a lawful investigatory stop, a police officer is justified in frisking the subject only under circumstances where a "reasonably prudent man ... would be warranted in the belief that his safety or that of others was in danger." Terry v. Ohio, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Further, the officer's belief is not reasonable unless the officer is "able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. [40] at 64, 88 S.Ct. [1889] at 1903, 20 L.Ed.2d [917] at 935 [1968]. It is not necessary that the investigating officer establish that it was more probable than not that the detained individual was armed and dangerous; it is sufficient that he establish a "substantial possibility" of danger.
State v. Hunter, 375 So.2d 99, 101-02 (La. 1979) (final citation omitted).
* * *
We recognize that the police have the right to ensure their own safety in an encounter with a suspected criminal. Under both our federal and state Constitutions, however, this right must be balanced against an individual citizen's right to be free from unreasonable searches. Although sometimes appearing to be a legal technicality, Article 215.1 B represents the legislature's attempt to maintain that balance by allowing an officer, who has lawfully stopped an individual, to perform a pat-down for weapons, but only if he "reasonably suspect [sic] that he is in danger."
A police officer's duty to enforce and uphold the laws includes not only those statutes that define and prohibit criminal conduct, but also those which define and limit the government's intrusion into the lives of its citizens. Unless the plain language of Article 215.1 B is interpreted as authorizing an officer to frisk every pedestrian who is stopped pursuant to subsection A, the only way a court can determine if the officer reasonably suspected that he was in danger is to require him to express that suspicion, and explain upon what it is based. Eliminating the requirement for such articulation not only eviscerates this statute, but also opens the door for potential abuse by the rare officer who acts upon personal prejudices rather than actual observation and experience.
96-0956 at pp. 7-8, 691 So.2d at 1299.
However, in many instances, suspicion of drug dealing itself is an articulable *39 fact that may support a frisk pursuant to La. C.Cr.P. art. 215(B). State v. Fortier, 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455("We can take notice that drug traffickers and users have a violent lifestyle, which is exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities."), 99-0244 at p. 7, 756 So.2d at 460, quoting State v. Curtis, 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also State v. Williams, 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142 (officer's testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La. C.Cr.P. art. 215(B)).[2]
If in the course of a frisk pursuant to La. C.Cr.P. art. 215.1(B) an officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the officer may seize it under the "plain feel" exception to the warrant requirement. Fortier, supra, citing Minnesota v. Dickerson, 508 U.S. 366, 377, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) and this court's decision in State v. Anderson, 96-0810 (La.App. 4 Cir. 5/21/97), 696 So.2d 105; State v. Williams, 98-3059, pp. 6-7 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 145-146.
In the instant case, Officer Scheuremann testified that, "because of the violence that's associated with the drug trade," when police officers stop someone in connection with a sale, they perform a pat down frisk to make sure they are not armed. Considering the facts and circumstances of this case, it cannot be said that the frisk of defendant was not justified. During the frisk, Officer Scheuremann felt objects in defendant's front pants pocket which, based on his experience, he believed were consistent with crack cocaine.
Further, Officer Lewis knew when he directed Officer Scheuremann and the federal agents to stop the three men that, moments before, defendant had in his possession three plastic bags containing slabs of crack cocaine. As previously discussed, this knowledge should be imputed to Officer Scheuremann and the federal agents who performed the stop. Knowledge of this fact would have given Officer Scheuremann probable cause to believe that defendant possessed cocaine on his person, justifying the search and seizure.
There is no merit to this assignment of error.

PRO SE ASSIGNMENT OF ERROR NO. 1
By this first pro se assignment of error, defendant claims that his trial counsel was ineffective for a number of reasons.
"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 195, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999); State v. Bordes, 98-0086, p. 7 (La. App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are *40 reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669, writ denied, 99-0721 (La.7/2/99), 747 So.2d 15. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236, writ denied, 99-1982 (La.1/7/00), 752 So.2d 175.

PRO SE ASSIGNMENT OF ERROR 1(A) AND PRO SE ASSIGNMENT OF ERROR 2:
Defendant first claims that his trial counsel was ineffective in failing to object to evidence that he attempted to distribute cocaine to Officer Lewis an hour before his arrest for the offense for which he was arrested, charged and convicted, and failed to object to evidence that defendant did distribute a piece of crack cocaine to a third party, all of which defendant characterizes as evidence of other crimes. Defendant is referring to testimony that he first attempted to sell Officer Lewis one or more slabs of cocaine for $150 each.
La. C.E. art. 404(B)(1) provides:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it plans to use at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. (emphasis added).
Generally, evidence of other crimes is inadmissible at trial because of the likelihood that the trier of fact will convict the defendant of the immediate charge based on his/her prior criminal acts. The emphasized portion of the provision above is the codification of the principle of "res gestae." Pursuant to the res gestae exception, evidence of another crime is admissible "when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to the other crime." State v. Colomb, 98-2813. p. 3 (La.10/1/99), 747 So.2d 1074, 1075; State v. Powell, 98-0278, p. 6 (La.App. 4 Cir. 11/17/99), 746 So.2d 825, 829. A close connexity in time and place is required between the evidence of other crimes and the charged offense. Powell, 98-0278 at p. 7, 746 So.2d at 829. Evidence admissible under the res gestae exception is not subject to any notice requirements. See La. C.E. art. 404(B)(1)(notice requirement only as to admissibility for proof of intent, motive, plan, etc.). In State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, the Louisiana *41 Supreme Court elaborated on the res gestae exception:
The res gestae or integral act doctrine thus "reflects the fact that making a case with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict." Id.

98-2813 at p. 3, 747 So.2d at 1076.
In the instant case, it is clear that the objectionable evidence was admissible pursuant to the res gestae doctrine, as it placed defendant in possession of three slabs of crack cocaine, at least one of which he attempted to sell to Officer Lewis within approximately one hour before he was arrested with the three slabs in his possession. In addition, Officer Lewis' testimony that he observed defendant break off a piece of cocaine from one of the slabs, and give it to a third party, who in turn handed it to Officer Lewis, was also clearly part of the res gestae. All of these events occurred within a short period-approximately one hour as asserted by defendant. As this evidence was admissible as part of the res gestae, counsel's failure to object to it was not deficient.
Defendant also claims that Officer Veit stated that the district attorney's office should have charged defendant with distribution of cocaine. He characterizes this statement as reference to another crime. The record does not reflect that Officer Veit made such a statement.

PRO SE ASSIGNMENT OF ERROR 1(B)
Defendant next claims that trial counsel elicited prejudicial inadmissible hearsay evidence from Officer Scheuremann.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C); State v. Castleberry, 98-1388, p. 18 (La.4/13/99), 758 So.2d 749, 765, cert. denied, Castleberry v. Louisiana, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999); State v. Raby, 98-1453, pp. 8-9 (La.App. 4 Cir. 6/2/99), 738 So.2d 699, 703, writ denied, 99-2236 (La.1/28/00), 753 So.2d 230. Hearsay is not admissible except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 802; State v. Richardson, 97-1995, p. 13 (La.App. 4 Cir. 3/3/99), 729 So.2d 114, 121, writ denied, 99-1087 (La.9/24/99), 747 So.2d 1119.
Defendant cites four instances where his trial counsel appeared to knowingly elicit hearsay testimony from Officer Scheuremann during cross examination. The first instance occurred when counsel asked if it was correct that he knew, based on what Officer Lewis told him, that the officer would find slabs of cocaine in defendant's pocket. Officer Scheuremann replied that Officer Lewis had stated that defendant was in possession of "slabs." Counsel was attempting to ascertain the basesthere were two justifications offered of the search and seizure, and/or the arrest, so as to attack it. The answer revealed nothing illicit. In another instance, defense counsel elicited hearsay to call into question Officer Scheuremann's credibility and memory of the events, as well as to highlight the fact that the arresting officer never saw the defendant in the act of committing a crime. This tactic did not produce a verdict of innocence. Nevertheless, this court has previously recognized that if an alleged error falls "within the ambit of trial strategy" it does *42 not "establish ineffective assistance of counsel." State v. Bordes, 98-0086, p. 8 (La.App. 4 Cir. 6/16/99), 738 So.2d 143, 147, quoting State v. Bienemy, 483 So.2d 1105, 1107 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." Id. quoting State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987). Because trial counsel's action in eliciting hearsay testimony from Officer Scheuremann was a strategic decision, it cannot be said that counsel was thereby ineffective.
Moreover, Officer Lewis had already testified to the substance of every alleged hearsay statement defendant claims was made by Officer Scheuremann. This is further evidence that trial counsel's decision was a strategic one, made with knowledge that Officer Lewis had already testified to these facts. Further, even assuming that counsel's performance in eliciting the evidence was deficient, because the evidence was cumulative, defendant was not prejudiced. That is, it cannot be said that there is a reasonable probability that, but for the elicitation of the hearsay testimony, the result of the proceeding would have been different. See State v. Labostrie, 96-2003, p. 10 (La. App. 4 Cir. 11/19/97), 702 So.2d 1194, 1200, writ denied, 98-0250 (La.6/26/98), 719 So.2d 1048,(the introduction of statements objected to as hearsay which are merely corroborative and cumulative of other testimony presented by the state is harmless error).

PRO SE ASSIGNMENT 1(C)
Defendant next claims that counsel was deficient in failing to note that his alleged prior conviction from 1990 was pursuant to now repealed La. R.S. 40:983, and that the prosecution for the offense had been dismissed under that section after he completed his probation.
La. R.S. 40:983, repealed by Acts 1995, No. 1251, § 2, provided at the time of defendant's plea of guilty:
Whenever any person who has not previously been convicted of any offense under this part pleads guilty to or is convicted of having violated R.S. 40:966C, 40:967C, 40:968C, 40:969C, 40:970C of this part, and when it appears that the best interests of the public and of the defendant will be served, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as may be required.
Upon the defendant's violation of any of the terms or conditions of his probation, the court may enter an adjudication of guilt and impose sentence upon such person.
Upon fulfillment of the terms and conditions of probation imposed in accordance with this section, the court shall discharge such person and dismiss the proceedings against him.
Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime, including the additional penalties imposed for a second or subsequent convictions under R.S. 40:982.
Discharge and dismissal under this section may occur only once with respect to any person.
Defendant's March 7, 1990 guilty plea was to possession of cocaine, then and now, a violation of La. R.S. 40:967(C). The guilty plea form, the docket master entry, and the minute entry all reflect that the guilty plea was entered pursuant to La. R.S. 40:983. Defendant received a suspended sentence, and three years active *43 probation with special conditions. Defendant's record, as reflected by his presentence investigation report, shows that he was arrested and convicted of two separate felony offenses during his probationary period-a conviction in July 1991 for a second offense of carrying a concealed weapon, and a conviction in July 1992 for possession of crack cocaine, which cocaine conviction was the second predicate felony for which he was adjudicated a habitual offender. For the July 1992 cocaine conviction, defendant was sentenced to four years at hard labor, which sentence was suspended, and he was placed on probation for two years. The docket master in the case reflects that in February 1993, the State filed a rule to show cause why defendant's probation in the La. R.S. 40:983 case should not be revoked. The trial court instead extended the probationary period. On September 2, 1993, the trial court ordered that the prosecution in the case falling under La. R.S. 40:983 be dismissed and the defendant's probation be terminated.[3]
In State v. Christian, 618 So.2d 559 (La.App. 4 Cir.1993), the defendant appealed his habitual offender adjudication. On appeal, the State conceded that the defendant should not have been adjudicated a habitual offender, as the predicate offense had been a guilty plea entered pursuant to La. R.S. 40:983. This court set forth the substance of La. R.S. 40:983, emphasizing that a discharge and dismissal under the statute shall be without court adjudication of guilt and "shall not be deemed a conviction." This court noted that the State agreed that a plea of guilty pursuant to La. R.S. 40:983 cannot be considered an adjudication of guilt, and thus cannot be used as an underlying offense to enhance a sentence. This court cited State v. Randall, 464 So.2d 971 (La.App. 4 Cir. 1985), and concluded that the habitual offender adjudication should be vacated. In Randall, this court held that a plea of guilty to possession of heroin entered pursuant to La. R.S. 40:983 cannot be considered an adjudication of guilt, and could not, therefore, serve as the basis of a charge of being a convicted felon in possession of a firearm. See also State v. Rowel, 97-1550 (La.App. 4 Cir. 3/31/99), 732 So.2d 123 (following Randall-plea of guilty to possession of cocaine entered pursuant to La. R.S. 40:983 not an adjudication of guilt for purposes of charging defendant as a convicted felon in possession of a firearm); Louisiana State Bar Association v. Reis, 513 So.2d 1173, 1176 (La.1987) ("a dismissal of prosecution [pursuant to La. R.S. 40:983] is tantamount to an acquittal").
Accordingly, because defendant's March 1990 "conviction" from a guilty plea entered pursuant to La. R.S. 40:983 should not have been used as a predicate conviction for sentence enhancement under the Habitual Offender Law, his trial counsel's failure to raise this issue was deficient, and such deficiency clearly prejudiced defendant. Defendant's adjudication and life sentence as a third-felony habitual offender is vacated, and the case remanded for a new habitual offender hearing.
Our resolution of this issue moots the other assignments of error presented for review.
For the foregoing reasons, we affirm defendant's conviction, but vacate his adjudication and sentence as a third-felony habitual offender, and remand the case for a new multiple bill hearing and sentencing.
CONVICTION ON VIOLATION OF LA. R.S. 40:967(A)(1) AFFIRMED; CONVICTION AND SENTENCE ON MULTIPLE BILL OF INFORMATION VACATED; CASE REMANDED FOR *44 NEW MULTIPLE BILL HEARING AND RESENTENCING.
NOTES
[1] Defendant failed to appear for his March 11, 1996 arraignment, and remained at large until his arrest on April 2, 1997.
[2] The U.S. Supreme Court recently recognized the increasing recognition by lower federal courts that persons involved in illicit narcotics activity are often armed. See Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)("Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. See, e.g., United States v. Sakyi, 160 F.3d 164, 169 (C.A.4 1998); United States v. Dean, 59 F.3d 1479, 1490, n. 20 (C.A.5 1995); United States v. Odom, 13 F.3d 949, 959 (C.A.6 1994); United States v. Martinez, 958 F.2d 217, 219 (C.A.8 1992)").
[3] Moreover, as previously noted, the presentence investigation report reflects that defendant pleaded guilty as charged to first offense possession of marijuana in October 1989. Thus, defendant was not eligible to plead pursuant to La. R.S. 40:983. See State v. Marcel, 94-0765 (La.App. 4 Cir. 8/17/94), 642 So.2d 259. However, there is no indication that the State objected to the plea, or that the plea was entered without the concurrence of the State.