MAX N. TOBIAS, JR., Judge.
 

 LThe defendants, Dione Brown (“Brown”), Kenneth Smith (“Smith”), and Norman Watson (“Watson”), were charged by bill of information on 24 January 2008, in Count One with possession of heroin in an amount of two hundred to four hundred grams, a violation of La. R.S. 40:966 C; in Count Two with possession of cocaine in an amount of two hundred to four hundred grams, a violation of La. R.S. 40:967 C; and in Count Three with possession of marijuana with the intent to distribute, a violation of La. R.S. 40:966 A. All of the defendants pleaded not guilty at their respective arraignments. The trial court denied the defendants’ motions to suppress
 
 *942
 
 on 9 May 2008. This court subsequently denied Brown’s application for supervisory writs as to the denial of the defendants’ motion(s) to suppress.
 
 [1]
 

 On 12 December 2008, the state
 
 nolle prosequied
 
 Count Three of the bill of information as to all defendants and amended Counts One and Two as to all defendants. On that same date all three defendants pleaded guilty to those amended counts under
 
 State v. Crosby,
 
 338 So.2d 584 (La. 1976), reserving their right to appeal the denial of their motion to suppress the evidence. All defendants waived legal sentencing delays and requested immediate sentencing.
 

 12As to Brown, the state amended Count One to possession of heroin and Count Two to possession of cocaine. Brown pleaded guilty and was sentenced on Count One to ten years at hard labor, suspended, with five years active probation and conditions, and on Count Two to five years at hard labor, suspended, with five years active probation and the same conditions as imposed on Count One, with the probations and conditions on each count to run concurrently.
 

 As to Smith, the state amended Count One to attempted possession of heroin with the intent to distribute and Count Two to possession of cocaine with the intent to distribute. Smith pleaded guilty and was sentenced on Count One to two years at hard labor, without benefit of parole, probation, or suspension of sentence, and on Count Two to the same sentence with the same restrictions.
 

 As to Watson, the state amended Count One to attempted possession of heroin and Count Two to possession of cocaine. Watson pleaded guilty and was sentenced to two years at hard labor without benefit of parole, probation, or suspension of sen-fence, and on Count Two to the same sentence.
 

 The trial court granted the defendants’ motion for appeal on 11 February 2009.
 

 FACTS
 

 New Orleans Police Department Detective Karla Baker testified at the 14 March 2008 motion to suppress hearing. She stated that on 20 November 2007, she received information from a reliable confidential informant that a Ms. Brown and a Mr. Smith were selling narcotics in the 500 block of Basin Street, but were using another address in the Little Woods area. Detective Baker was not present | ^during a subsequent surveillance of the 500 block of Basin Street by Detective Tommie Felix. She said that during his surveillance Detective Felix observed what he believed to be narcotics transactions. The subjects left the scene in a vehicle.
 

 Detective Baker said officers positioned themselves along the freeway in the direction they believed the subjects would travel. Detective Felix followed them from the inception, and other officers would join in as the subjects passed by them. The subjects were followed to 14011 Linden Street in the Little Woods area of New Orleans. When the vehicle left that address, officers stopped it. Brown was in the vehicle. Detective Baker patted her down and discovered a “very large bag of crack cocaine” in her front pants, just behind the zipper. Detective Baker conducted a more thorough search of Brown incidental to her arrest and found three hundred dollars in her pants pocket.
 

 Detective Baker obtained an application for a search warrant for the Linden Street residence. Detective Baker identified State Exhibit 1,
 
 in globo,
 
 consisting of the
 
 *943
 
 application for the search warrant, the search warrant, and the return on the search warrant. Detective Baker identified the three defendants in court.
 

 Detective Baker confirmed on cross examination that police did not arrest any alleged purchaser of drugs or arrest anyone engaged in an actual sale. No long-term surveillance occurred. She confirmed that her pat down of Brown after the vehicle was stopped was a “Terry” pat down. When asked whether she noticed anything on Brown’s person that looked like a weapon, Detective Baker asked what difference that made, stating that a weapon can come in many forms, and that she cannot judge whether someone has a weapon on their person until she checks. She replied in the affirmative when asked whether when conducting an investigatory stop she felt comfortable patting down any person being stopped.
 

 |40n redirect examination, Detective Baker was asked about concerns she has when making a stop of someone suspected of having been conducting narcotics transactions. Detective Baker replied that a very close connection exists between narcotics and weapons, stating that one has to look for guns and knives. She confirmed that her initial frisk of Brown was for weapons.
 

 New Orleans Police Department Detective Tommie Felix testified that on 20 November 2007, he was conducting a narcotics investigation at 501 Basin Street. He observed individuals walk up to Smith and give him U.S. currency. Smith would then signal to Brown, and the purchaser would walk over to her and receive small objects. Detective Felix described Watson as the lookout, saying that if police car passed he signaled everyone, and all of them went inside what the detective referred to as the “store.” Detective Felix witnessed several transactions. He said the three suspects eventually got into a Nissan Murano vehicle and drove to the Linden Street residence. He detailed the surveillance of the defendants’ vehicle during the drive to the Linden Street residence. Detective Felix participated in executing the search warrant at the Linden Street residence. Police there found in a dresser heroin, crack cocaine, and marijuana; underneath the last drawer, on the floor, more than three thousand dollars was found. Also, a scale was also found.
 

 Detective Felix confirmed on cross examination that no one was arrested during the surveillance on Basin Street. He said he spoke with the confidential informant at the beginning of the surveillance, and the informant identified the three defendants at the location where the three were engaged in selling narcotics. Once the defendants arrived at the Linden Street residence, Detective Felix stayed within view of it. He did not participate in the stop of the defendants’ vehicle. He Land perhaps two other officers conduced a protective sweep of the Linden Street residence before the search warrant was signed to make sure no one else was inside. Detective Felix identified a photograph of the New Orleans Police Department’s First District Police Station at 501 N. Rampart/Basin Street. Officers also searched a Nissan Maxima automobile that was parked in the driveway of the Linden Street residence.
 

 Detective Baker was recalled as a witness. She testified that she advised other officers by phone that she had obtained a search warrant, and she confirmed that as far as she was aware that was when the officers began the search. Detective Baker had no knowledge of the search of a Maxima automobile at the residence, or a blue Camry, or anything about a 2008 Hyundai Accent automobile that defendant Watson had rented. The Hyundai was
 
 *944
 
 transported to the Seventh District Police Station.
 

 Detective Felix testified a second time at an 11 April 2008 continuation hearing on the defendants’ motion to suppress. He was questioned about his previous testimony about a grocery store on Basin Street. He said he had always known the address of that store to be 501 Basin Street, stating that he and his friends used to meet at that store. He said the store was approximately one block from the First District Police Station, and that it was on the uptown corner on Basin Street, across a side street from the Iberville Housing project.
 

 Brown testified at the 9 May 2008 continuation hearing on the defendants’ motion to suppress that on 20 November 2007, she and others were driving in her aunt’s Murano down Paris Avenue, about to get to 1-10, when police stopped them. She denied having been on Basin Street earlier that day or having engaged in hand-to-hand narcotics transactions with Watson and Smith in front of the police | f,substation. She acknowledged that a police station is right across the street from the grocery store on Basin Street. The police ordered them out of the car after it was stopped. Brown said she was searched by a female officer, who discovered a rolled up cigar and a small bag of marijuana. She asserted that no other drugs were found in the vehicle. Police took her to her home and entered it with a key. She said Terrell Wilson and Mack Neil used a coat hanger to open the door of a blue Camry parked on the grass of her aunt’s yard. The two men came out with a little brown and orange shoebox and said “Bingo.” Those two also searched a Maxima automobile that was in her driveway. Brown said she told the officers she did not know who the Camry belonged to. Her aunt told the officer she did not know either. Bruce Little, who Brown said was wearing white and was either a Captain or a Lieutenant, opened the shoebox and found heroin and crack cocaine, which was displayed to her. Brown stated on cross examination that a neighbor had tried to get the blue Camry towed.
 

 ERRORS PATENT
 

 A review of the record reveals patent errors as to both sentences imposed on Watson and one sentence imposed on Smith.
 

 In sentencing Watson to two years imprisonment at hard labor for attempted possession of heroin in Count One and two years at hard labor for simple possession of cocaine in Count Two, the trial court stated that each sentence was to be served without benefit of parole, probation, or suspension of sentence. Neither La. R.S. 40:966 C(l), providing the sentence for attempted possession of heroin, nor La. R.S. 40:967 C(2), providing the sentence for possession of cocaine, allows for the sentence to be served without the benefit of parole, probation, or suspension |7of sentence. Nothing in the attempt statute, La. R.S. 14:27 D(3), alters how the sentence is to be served in that respect. Accordingly, Watson’s sentence must be amended to delete those limitations.
 

 In sentencing Smith to two years imprisonment at hard labor for attempted possession of heroin with the intent to distribute in Count One, the trial court stated that the sentence was to be served without benefit of parole, probation, or suspension of sentence. However, La. R.S. 40:966 B(l), providing the penalty for possession of heroin with the intent to distribute, simply provides that a minimum part of the sentence be served without benefit of probation or suspension of sentence. There is no provision for the denial of the benefit of parole. Nothing in the attempt statute, La. R.S. 14:27 D(3), alters
 
 *945
 
 how the sentence is to be served in that respect. Accordingly, Smith’s sentence must be amended to delete the limitation that it is to be served without the benefit of parole.
 

 ASSIGNMENT OF ERROR NO. 1
 

 The defendants first argue that the trial court erred in denying their motion to suppress the evidence because the information provided by the confidential informant, even when coupled with the police surveillance, failed to establish either reasonable suspicion for the traffic stop or probable cause for the issuance of a search warrant.
 

 Traffic Stop and Warrantless Seizure of Evidence from Brown
 

 Detective Baker recovered a large bag of crack cocaine when she conducted a protective frisk of Brown after the car in which Brown and the other two defendants were driving was stopped by police after they returned to and then left | sthe Linden Street residence. This evidence was used against Brown and was also used to secure the search warrant for the Linden Street residence.
 

 Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement.
 
 State v. Edwards,
 
 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901. On trial of a motion to suppress, the state has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D);
 
 State v. Jones,
 
 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395. A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v. Devore,
 
 00-0201, p. 6 (La.App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601;
 
 State v. Mims,
 
 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192,193-194.
 

 La.C.Cr.P. art. 215.1 A codifies the U.S. Supreme Court’s authorization of stops based on reasonable suspicion set forth in
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
 

 A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
 

 “Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and a reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights.
 
 State v. Jones,
 
 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37;
 
 State v. Littles,
 
 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial.
 
 State v. Benjamin,
 
 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989;
 
 State v. Tyler,
 
 98-1667, p 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails.
 
 State v. Carter,
 
 99-0779, p. 6 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 274.
 

 The totality of the circumstances must be considered in determining whether reasonable suspicion exists.
 
 State v. Oliver,
 
 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop.
 
 State
 
 
 *946
 

 v. Dennis,
 
 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in determining if his inferences from the facts at hand were reasonable.
 
 State v. Hall,
 
 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57;
 
 State v. Cook,
 
 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident.
 
 State v. Ratliff,
 
 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.
 

 In the case at bar, based on a tip to Detective Baker from an individual she described as a confidential informant who was reliable in the past, Detective Felix set up a surveillance of the described location. Once Detective Felix was in position, the informant telephoned him and described the individuals for him. Detective Felix witnessed what appeared to him to be several hand-to-hand narcotics sales, with the purchaser giving U.S. currency to Smith, whereupon Smith would signal to Brown, the purchaser would walk over to Brown, and she |inwould hand the purchaser small objects. During this time Watson acted as what Detective Felix described as a lookout. After observing these apparent narcotics transactions, the police observed the three defendants enter a vehicle and drive off. Based on information from the informant, the police anticipated that the defendants would drive to a residence in the Little Woods area. Police were able to station officers along the anticipated route, and Detective Felix followed the defendants from the beginning, from his surveillance position. The individuals drove to the Linden Street residence. Officer observed the defendants enter the residence in question with a key, then leave. Officers then stopped the car in which the defendants were driving. Brown was frisked by Detective Baker, and the large bag of crack cocaine was discovered inside of her pants.
 

 In them argument as to this assignment of error, the defendants submit that (a) the information from the informant alone was insufficient to establish reasonable suspicion to stop them because there was no time frame established regarding the confidential informant’s alleged past observations of criminal activity by them; (b) no information that the informant had ever purchased narcotics from defendants was presented; and (c) nothing existed to suggest that the informant predicted when the defendants would be engaged in narcotics sales or the times when they would leave or return.
 

 The defendants further argue that the surveillance by police did not add anything justifying the traffic stop because the police testimony about the surveillance was not credible. They base this argument on what they say was an incorrect address given by police of the location where the store at which the defendants were allegedly selling narcotics. The defendants also point out that none of the alleged purchasers was arrested. However, as to the credibility of |nDetective Felix, the trial court obviously accepted his testimony that he believed the address of the grocery store in front of which defendants were observed allegedly selling narcotics was 501 Basin Street, even if it was incorrect.
 

 The defendants cite
 
 State v. Robertson,
 
 97-2960 (La.10/20/98), 721 So.2d 1268, where police received an anonymous tip that an individual known as “Will,” who drove a dark green Pontiac Grand Am with very dark tinted windows, was involved in the illegal sale of narcotics within the Magnolia Housing Development. The caller described Will. The caller further
 
 *947
 
 stated that the described vehicle would be parked in the 2800 block of Magnolia Street when Will was not delivering narcotics. Police relocated to the 2800 block of Magnolia Street and identified a dark green Pontiac Grand Am with dark tinted windows parked in a driveway. While the officers were getting in position to set up surveillance, they observed the vehicle pull out of the driveway and begin to drive away. The officers followed the vehicle until it parked in the 2500 block of Sixth Street. When the driver exited the vehicle, the officers observed that he matched the description given by the caller. The officers then approached the defendant and asked his name. After the defendant identified himself as William Robertson, police informed him that he was under investigation for narcotics violations. A canine detention unit was called to the scene and arrived approximately ten to fifteen minutes later. When the dog indicated that an odor of narcotics was coming from inside the vehicle, police entered the vehicle and discovered a large plastic bag filled with crack cocaine underneath the ashtray. Thereafter, the defendant was placed under arrest. The trial court denied the defendant’s motion to suppress 112the evidence, and this court denied the defendant’s writ application on the ruling.
 
 [2]
 
 The Louisiana Supreme Court reversed, finding that because the tip did not provide sufficiently particular information concerning the defendant’s future actions, an important basis for forming reasonable suspicion was absent. However, the court noted that:
 

 [T]he police were not powerless to act on the non-predictive, anonymous tip they received. The officers could have set up more extensive surveillance of defendant until they observed suspicious or unusual behavior. Furthermore, if, after corroborating the readily observable facts, the officers had noticed unusual or suspicious conduct on defendant’s part, they would have had reasonable suspicion to detain him. These circumstances, however, were not present here. In the absence of any suspicious conduct or corroboration of information from which police could conclude that the anonymous informant’s allegation of criminal activity was reliable, we must conclude that there was no reasonable suspicion to detain defendant.
 

 Robertson,
 
 97-2960, pp. 5-6, 721 So.2d at 1270-71.
 

 The defendants analogize
 
 Robertson
 
 to their case. However, even assuming for the sake of argument that the tip to Detective Baker was shown to be no more reliable than the anonymous tip in
 
 Robertson,
 
 unlike
 
 Robertson,
 
 police in the instant case conducted a surveillance based on the information received in the tip and observed what they believed to be were several hand-to-hand narcotics transactions involving two of the defendants as participants and one as a lookout. The defendants were where the tipster said they would be, and after engaging in the narcotics transactions they traveled from that location by automobile to a residence in the Little Woods area. The tipster had told police that the defendants kept drugs at a residence in the Little Woods area. Police observed the defendants | isenter the residence with a key and then leave. At that point, considering the totality of the circumstances, police had reasonable suspicion to believe the defendants were committing, had committed or were about to commit an offense, and lawfully stopped them. Therefore, the trial court properly did not suppress the evidence on any ground related to the issue of whether
 
 *948
 
 there was reasonable suspicion to stop the vehicle in which the defendants were riding.
 

 In this argument the defendants also attack Detective Baker’s action in frisking or conducting a limited pat down of Brown during which the officer noticed a baseball-size bag of crack cocaine concealed down Brown’s pants, behind her zipper. The defendants’ argument is that no reasonable suspicion existed that Brown had a weapon, and that therefore the pat down or frisk was not warranted, and the crack cocaine was not lawfully seized. They do not argue that the object felt by Detective Baker inside of Brown’s pants was not immediately recognizable as contraband.
 

 If a police officer stops a person pursuant to La.C.Cr.P. art. 215.1 A whom he reasonably suspects is committing, has committed, or is about to commit a crime, and reasonably suspects that he is in danger, the officer may frisk the outer clothing of such person for a dangerous weapon; if the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. La.C.Cr.P. art. 215.1 B;
 
 State v. Jones,
 
 99-0861, p. 12 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 38. The officer need not be absolutely certain that the person is armed, but the facts must justify a belief that the officer’s safety or that of others is in danger.
 
 State v. Williams,
 
 98-3059, p. 4 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144.
 

 |14In the instant case, Detective Baker essentially conceded on cross examination that she did not see a weapon on Brown’s person prior to patting her down. However, Detective Baker was asked on redirect examination about concerns she has when making a stop of someone who has been conducting what she believes to have been narcotics transactions. Detective Baker replied that there is a very close connection between narcotics and weapons, stating that one has to look for guns and knives. She also confirmed that her initial frisk of Brown, before Brown was arrested, was for weapons.
 

 A recognized and close association between narcotics traffickers and weapons exists.
 
 State v. Wilson,
 
 00-0178, p. 3 (La.12/3/00), 775 So.2d 1051, 1053. Thus, in
 
 Wilson,
 
 the Louisiana Supreme Court upheld an officer’s protective frisk of an individual whom the experienced former undercover narcotics officer observed in a known drug area, crouched down next to the driver’s side door of an occupied vehicle. Based solely on the recognized drug trade-weapons connection, the court found that the officer had “a [sic] articulable and objectively reasonable basis for conducting a self-protective search of the defendant’s outer clothing for weapons.”
 
 Id. See also State v. Small,
 
 00-0564, p. 1 (La.3/24/00), 762 So.2d 1071 (“When the officers lawfully stopped defendant and conducted a pat down in a self-protective search for weapons based on their experience that weapons were often associated with narcotics trafficking,.... ”).
 

 In
 
 Jones, supra,
 
 this court, in reviewing the propriety of a weapons frisk, noted:
 

 [I]n many instances, suspicion of drug dealing itself is an articulable fact that may support a frisk pursuant to La. C.Cr.P. art. 215(B).
 
 State v. Fortier,
 
 99-0244 (La.App. 4 Cir. 1/26/00), 756 So.2d 455 (“We can take notice that drug traffickers and users have a violent lifestyle, which |1Bis exhibited by the criminal element who are generally armed due to the nature of their illicit business. Therefore, a police officer should be permitted to frisk a suspect following an investigatory stop [based on reasonable suspicion] relating to drug activities.”), 99-0244 at p. 7, 756 So.2d at
 
 *949
 
 460, quoting
 
 State v. Curtis,
 
 96-1408, pp. 9-10 (La.App. 4 Cir. 10/2/96), 681 So.2d 1287, 1292. See also
 
 State v. Williams,
 
 98-3059 (La.App. 4 Cir. 3/3/99), 729 So.2d 142 (officer’s testimony that he frisked a defendant suspected of drug activity to look for weapons for his own safety was sufficient to validate a frisk pursuant to La.C.Cr.P. art. 215(B)). (Footnote omitted).
 

 Jones,
 
 99-0861 at p. 14, 769 So.2d at 38-39.
 

 In the case at bar, considering that the officers stopped the vehicle in which the defendants were riding because they suspected them of narcotics trafficking, Detective Baker justifiably patted down Brown, lawfully recovering the baseball-size bag of crack cocaine concealed down Brown’s pants.
 

 Probable Cause to Issue the Search Warrant
 

 In
 
 State v. Green,
 
 02-1022 (La.12/4/02), 831 So.2d 962, the Court set out in extensive detail the applicable law pertaining to probable cause to issue search warrants, as follows:
 

 It is a basic tenet of this state’s constitution that every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. LA. CONST. ANN. art. I, § 5. A judge may issue a warrant authorizing the search for and seizure of any thing within the territorial jurisdiction of the court which “[m]ay constitute evidence tending to prove the commission of an offense.” LA.CODE CRIM. PROC. ANN. art. 161(A)(3). I is also well accepted that a search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts that establish the cause for the issuance of the warrant. LA.CODE CRIM. PROC. ANN. art. 162. As provided in this state’s constitution |1fiand the Code of Criminal Procedure a search warrant shall particularly describe the person or place to be searched, the person or things to be seized, and the lawful purpose or reason for the search. LA. CONST. ANN. art. I, § 5; LA.CODE CRIM. PROC. ANN. art. 162.
 

 Probable cause sufficient to issue a search warrant “exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.”
 
 State v. Johnson,
 
 408 So.2d 1280 (La.1982). A magistrate must be given enough information to make an independent judgment that probable cause exists to issue a warrant. See, e.g.,
 
 State v. Manso,
 
 449 So.2d 480, 482 (La.1984),
 
 cert. denied sub nom., Manso v. Louisiana,
 
 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The United States Supreme Court held that “[sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.”
 
 United States v. Leon,
 
 468 U.S. 897, 915, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (citations omitted). Moreover, this Court previously held: “[t]he process [of determining probable cause] simply requires that enough information be presented to the issuing magistrate to enable him to determine that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal justice system.”
 
 State v. Rodrigue,
 
 437 So.2d 830, 833 (La.1983) (citing
 
 Jaben v. United States,
 
 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965)).
 

 
 *950
 
 An issuing magistrate must make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place.
 
 State v. Byrd,
 
 568 So.2d 554, 559 (La.1990). This affidavit must contain, within its four corners, the facts establishing the existence of probable cause for the warrant.
 
 State v. Duncan,
 
 420 So.2d 1105 (La.1982);
 
 State v. Wells,
 
 253 La. 925, 221 So.2d 50 (1969). In Wells, the source of the “four corners” doctrine” in this state, this Court noted that Article 162 required that the facts establishing probable cause be recited in the affidavit because the judge, not the affiant, is the one who must be satisfied as to the existence of probable cause. LA.CODE EVID. ANN. art. 703(D) Instates that when evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a trial on his motion to suppress that evidence. The task of a reviewing court is simply to insure that under the totality of the circumstances the issuing magistrate had a “substantial basis” for concluding that probable cause existed.
 
 Illinois v. Gates,
 
 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Accordingly, in
 
 Rodrigue,
 
 we stated, “The magistrate’s determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable.”
 
 Rodrigue,
 
 437 So.2d at 833. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, reviewing courts should interpret the affidavit in a realistic and common sense fashion, aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers.
 
 State v. Jenkins,
 
 2001-0023 (La.6/22/01), 790 So.2d 626 (citing
 
 United States v. Ventresca,
 
 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965));
 
 State v. Loera,
 
 530 So.2d 1271, 1278 (La.App. 2 Cir.1988), writ denied, 536 So.2d 1252 (La.1989).
 

 [[Image here]]
 

 The determination of probable cause, although requiring something more than bare suspicion, does not require evidence sufficient to support a conviction. Probable cause, as the name implies, deals with probabilities.
 
 Brinegar v. United States,
 
 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949);
 
 Simms,
 
 571 So.2d at 148. The determination of probable cause, unlike the determination of guilt at trial, does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.
 
 Gerstein v. Pugh,
 
 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975);
 
 Rodrigue,
 
 437 So.2d at 830. The determination of probable cause involves factual and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act.
 
 Simms,
 
 571 So.2d at 149;
 
 State v. Ogden and Geraghty,
 
 391 So.2d 434 (La.1980). Likewise, probable cause will not be defeated simply because innocent explanations for an activity can be imagined. LAFAVE, SEARCH AND SEIZURE, § 3.2(e), p. 69. |1sProbable cause exists if a “succession of superficially innocent events had proceeded to the point where a prudent man could say to himself that an innocent course of conduct was substantially less likely than a criminal one.”
 
 Id.
 
 at 70 (quoting
 
 United States
 
 
 *951
 

 v. Patterson,
 
 492 F.2d 995 (9th Cir.1974)). (Footnote omitted).
 

 Green,
 
 02-1022 at pp. 6-9, 831 So.2d at 968-970.
 

 The affidavit/application for the search warrant completed by Detective Baker stated that she met with a reliable confidential informant whose information in the past had led to the arrest of numerous individuals involved in illegal narcotics trafficking in the City of New Orleans. The informant told her that a black female named Dione Brown and a black male named Kenneth Smith lived in a residence in the Little Woods area of New Orleans East at an address unknown to the informant. The informant cited the address as a retail distribution stash and packaging house for crack cocaine and heroin. The informant also said Smith was in charge, and that he and Brown would sometimes incorporate one or two other individuals for assistance in selling and packaging narcotics. The informant stated that Brown and Smith would keep larger quantities of heroin and crack cocaine at their residence and transport some in a black Nissan Mu-rano SUV, license plate number REH 248, to a storefront located near the Iberville Housing Development, at 501 Basin Street. The informant further stated that after the sales were completed, Brown and Smith would return to the Little Woods residence and gather additional heroin and crack cocaine for additional sales at the Basin Street location.
 

 Detective Baker said in the search warrant affidavit that the factual basis for the informant’s knowledge was from personal observations of what were perceived [13to be illegal hand-to-hand narcotics transactions made from the Basin Street location.
 

 Detective Baker recounted the surveillance by Detective Felix, stating that he observed what he believed were several narcotics transactions over an hour span. He observed a slim black female, dressed in blue jeans and a blue t-shirt, approach Smith and engage in a short conversation. The female handed Smith what appeared to be U.S. currency, at which time Smith signaled via a hand gesture (holding up one finger) to Brown. Brown then reached into the front of her pants and removed a small object. Brown gave the small object to the female, who then placed it into her left sock and left the location. The affidavit recited that Detective Felix observed Smith and Brown use the same routine “numerous times” with the unknown male (apparently referring to Watson) acting as a lookout. Detective Felix observed a marked police car approach the location, at which time the unknown male, who was holding a small child, verbally stated something to Smith and Brown, and all three individuals entered the store. After the police car passed by, all three individuals exited the store. They decided not to conduct any individual “take downs’ of buyers due to the ongoing investigation.
 

 Detective Baker then recited in the affidavit the details surrounding the tailing of the defendants’ vehicle, the black Murano SUV, to 14011 Linden Street, where Smith, Brown, and the unknown black male with the child exited the vehicle and entered the house, utilizing a key which Smith possessed. The three emerged from the residence approximately one hour later and reentered the vehicle. The vehicle was stopped at Paris Road and 1-10, where Detective Baker discovered a baseball-size amount of crack cocaine inside the front of Brown’s pants. Brown, Smith, and Watson (the heretofore unknown male) were arrested. Detective Baker 120stated in the affidavit that other units involved then relocated to 14011 Linden Street to secure it, while she relocated to the Seventh District Station to prepare the search warrant affidavit.
 

 
 *952
 
 Detective Baker concluded her search warrant affidavit by stating that, based upon the information received from the informant and corroborated by the surveillance, and the arrest, it was her belief that heroin and crack cocaine were then being secreted within 14011 Linden Street. The affidavit was dated 20 November 2007 and timed at 6:00 p.m. The search warrant order of search was executed and issued on that same date and time. The return on the warrant reflects a total of two hundred sixty-seven grams of crack cocaine, two hundred forty-nine grams of heroin, almost seven grams of marijuana were recovered, $4,273.00 in U.S. currency, and a digital scale.
 

 The search warrant application/affidavit did not state a time period within which the confidential informant had observed Smith and Brown engage in crack cocaine and heroin distribution at a location on Basin Street prior to the initiation of the surveillance by Detective Felix. However, it set forth that in response to the tip, Detective Felix set up a surveillance of the Basin Street location and subsequently observed a number of what he believed to be narcotics transactions conducted there by Smith and Brown, and a person later identified as Watson. Detective Felix’s observations thus confirmed the credibility of information given by the informant and his/her reliability. The affidavit also recited that the informant told Detective Baker that Smith and Brown sold the narcotics on Basin Street, but kept larger quantities of crack cocaine and heroin at their residence in the Little Woods section of New Orleans. The informant stated that after selling narcotics on Basin Street Smith and Brown would return to the Little Woods 12iresidence to gather more narcotics for additional sales at the Basin Street location. The affidavit stated that after Detective Felix observed the narcotics transactions on Basin Street, he followed Smith, Brown, and Watson, with other officers picking up the rolling surveillance along the anticipated route, to a residence in the Little Woods section of New Orleans. Thus, the informant was able to predict more activity by the defendants, with that activity being viewed in light of the fact that they had been observed by Detective Felix selling narcotics. This further strengthened the credibility of information given by the informant, and his/her reliability, insofar as all the information he had given Detective Baker, but particularly the information that Smith and Brown kept larger quantities of crack cocaine and heroin at the Little Woods residence.
 

 The police subsequently stopped the vehicle in which the defendants were driving, and a limited pat-down frisk of Brown by Detective Baker revealed a baseball-size package of crack cocaine. This discovery further buttressed the general credibility of the information given by the unidentified confidential informant, and his/her reliability.
 

 The search warrant application/affidavit makes it clear that the surveillance on Basin Street by Detective Felix, the following of the defendants by police to the Linden Street residence in the Little Woods section of New Orleans East, the stop of defendants’ vehicle and discovery of crack cocaine on the person of Brown, and the making and filing of the affidavit for the search warrant itself, all transpired in seamless sequence.
 

 Considering the totality of circumstances set forth in the search warrant affidavit, the issuing magistrate made a practical, common sense decision that there was a fair probability that evidence of a crime would be found inside of the Linden | ^Street residence of Smith and Brown at the time of the application for and the issuance of the search warrant. It
 
 *953
 
 cannot be said that the trial court was in error in determining that probable cause existed to issue the search warrant.
 

 We find no merit to any aspect of this assignment of error.
 

 ASSIGNMENT OF ERROR NO. 2
 

 In their second assignment of error, the defendants argue that there is a material misrepresentation in the search warrant affidavit that renders it invalid. The defendants argue that the alleged material misrepresentation is that the municipal address of the Basin Street location where the narcotics sales were allegedly made by the defendants was not 501 Basin Street.
 

 In connection with the motion to suppress hearings, the defendants introduced a number of photographs depicting the New Orleans Police Department First District Police Station with a municipal address of 501 N. Rampart/Basin Street. Detective Felix testified that he had always known the address of the grocery store at which the narcotics sales were made as 501 Basin Street. He admitted that he did not look to see what municipal address was actually on the grocery store. Detective Felix described the grocery store as right across the street from the Iberville Housing Development. It is apparent that, at worst, Detective Felix simply was mistaken as to the municipal address of the grocery store.
 

 However, no indication is present that Detective Felix intentionally misrepresented the precise municipal address of the grocery store. The defendants offer no rational suggestion as to why Detective Felix would do such a thing, or what he would have to gain from such a misrepresentation. We find no indication that any error as to the municipal address of the Basin Street location was anything | ^other than unintentional on the part of the informant, Detective Felix, and Detective Baker.
 

 At worst, the address of the Basin Street location of the store where the defendants engaged in narcotics sales was inadvertently listed in Detective Baker’s search warrant affidavit. When information contained in an affidavit for a search warrant is inadvertently misrepresented, the reviewing court should excise that information from the search warrant affidavit when considering whether the affidavit provided probable cause for the issuance of the warrant.
 
 State v. Fournette,
 
 08-0254, p. 26 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, 216,
 
 writs denied,
 
 08-1815, 08-1824 (La.4/17/09), 6 So.3d 789.
 

 In the instant case, the defendants argue that because no reasonable suspicion existed for the stop of their automobile by police, any mention of that stop and evidence seized as a result should also be stricken from the warrant affidavit. However, we have already determined, in addressing the previous assignment of error, that the officers had reasonable suspicion for that traffic stop.
 

 Excising the municipal Basin Street number from the search warrant affidavit, the affidavit still provides probable cause for the issuance of the search warrant.
 

 No merit to this assignment of error is shown.
 

 ASSIGNMENT OF ERROR NO. 3
 

 In this assignment of error, the defendants argue that the warrantless entry by police into the 14011 Linden Street residence was not supported by exigent circumstances.
 

 ^Detectives Baker and Felix freely admitted that after the surveillance showed the defendants selling narcotics, and after the defendants were stopped in their car and crack cocaine was found on Brown’s person, officers entered the Linden Street
 
 *954
 
 residence to secure it and any evidence therein pending Detective Baker’s securing of the search warrant. The defendants argue that there were no exigent circumstances justifying the entry into the residence.
 

 In their argument the defendants concede that no evidence was claimed to have been discovered in the residence prior to the issuance of the search warrant. They implicitly concede in their appeal that the subsequent issuance of the search warrant and search of the premises pursuant thereto would have removed the taint of any illegal entry by the officers prior to the warrant being issued. However, the defendants submit that because there was no probable cause to issue the search warrant, the warrant and subsequent search pursuant thereto do not remove the illegal taint.
 

 We interpret this assignment of error by the defendants is premised on the supposition that the evidence was illegally seized because police had no valid search warrant and no exigent circumstances to enter the residence without a warrant.
 

 The state does not attempt to argue that exigent circumstances were present, but cites this court’s decision in
 
 State v. Roebuck,
 
 530 So.2d 1242 (La.App. 4 Cir.1988). In
 
 Roebuck,
 
 police officers secured a hotel room pending the securing of a search warrant for it. The officers observed nothing in the hotel room that would have aided their investigation or helped them obtain a search warrant. The evidence subsequently seized pursuant to the search warrant was not obtained by exploitation of the entry into the hotel room, but by means sufficiently Indistinguishable to be purged of any taint. Thus, this court concluded that evidence from the hotel room “does not have to be suppressed because of the police entry into the room hours before, even if such entry is considered illegal.”
 
 Roebuck,
 
 530 So.2d at 1250.
 

 The case at bar is no different. All the evidence seized from the Linden Street residence was seized pursuant to the search warrant. There was no information in the affidavit that was obtained by virtue of the officers’ entry into the residence before the warrant was issued that was used to secure the search warrant. Therefore, the evidence was lawfully seized, and the trial court properly denied the motion to suppress it.
 

 We find no merit to this assignment of error.
 

 ASSIGNMENT OF ERROR NO. 4
 

 In their last assignment of error the defendants argue that their motion to suppress should have been granted because Detective Felix was not in good faith in executing the search warrant because he should have known, based on his numerous years as a police officer, that probable cause for the issuance of the search warrant did not exist. The defendants submit that Detective Felix executed the search warrant when he knew or should have known that it was gained by perpetrating a fraud on the court.
 

 Other than perhaps an unintentional mistake as to the correct municipal number for the Basin Street grocery store where Detective Felix said the defendants were selling narcotics, we find no indication that any representation made by Detective Felix was false. The search warrant provided sufficient probable cause for issuance of the warrant.
 

 12fjThe defendants cite
 
 United States v. Leon,
 
 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), for the proposition that evidence should not be excluded when officers were acting in reasonable reliance on the issuance of a warrant. However,
 
 Leon
 
 applies where the court reviewing a
 
 *955
 
 defendant’s challenge to a search and seizure finds that there was insufficient probable cause to issue the search warrant. Then the issue becomes whether the officers who executed the warrant reasonably relied on it, i.e., acted in “good faith.”
 

 Leon
 
 is not applicable to the instant case because the search warrant in the instant case was issued upon sufficient probable cause. Moreover, we find no indication that any police officer in the instant case did not act in reasonable reliance on the magistrate’s issuance of the search warrant for the Linden Street residence.
 

 No merit exists in this assignment of error.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the convictions of all three defendants. We affirm (1) both sentences of Dione M. Brown; and (2) Kenneth Smith’s sentence as to Count Two, We amend Kenneth Smith’s sentence as to Count One to delete that portion denying him the benefit of parole, and affirm his sentence as amended. We amend both sentences imposed on Norman Watson to delete the limitations that they be served without benefit of parole, probation, or suspension of sentence, and that affirm as amended his sentences.
 

 AFFIRMED AS TO DEFENDANT BROWN; AMENDED IN PART AND AS AMENDED, AFFIRMED AS TO DEFENDANTS SMITH AND WATSON.
 

 [1]
 

 .
 
 State v. Brown,
 
 08-0895, unpub., (La.App. 4 Cir. 8/4/08).
 

 [2]
 

 . State v. Robertson,
 
 97-1950, unpub. (La.App. 4 Cir. 11/5/97).