SANDRA CABRINA JENKINS, Judge.
| TPursuant to a plea agreement with the State, defendant, Cortney Powell, entered guilty pleas to four narcotics charges. Powell entered the guilty pleas under State v. Crosby,[1] reserving his right to appeal the trial court’s prior ruling on his motions to suppress evidence and statements. Powell now appeals his convictions, arguing that the trial court erred in denying his motions to suppress. Finding no error in the trial court’s ruling on the motions, we affirm Powell’s convictions and sentences.
PROCEDURAL BACKGROUND
Cortney Powell was charged by bill of information with five offenses: (1) possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(1); (2) possession with intent to distribute BZP, a violation of La. R.S. 40:966(A)(1); (3) possession with intent to distribute cocaine, a violation of La. R.S. 40:967(A)(1); (4) possession of hydrocodone, a violation of La. R.S. 40:968(C); and (5) being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1.
*892 |2At his arraignment, on July 25, 2011, Powell pled not guilty, to all charges. Powell filed motions to suppress the evidence and statements and a motion for preliminary examination. The trial court held a hearing on the motions on March 13, 2012, at which the trial court denied Powell’s motions to suppress and found probable cause for the charges in the bill of information. On July 9, 2013, pursuant to a plea agreement with the State, Powell entered guilty pleas to the first four counts of the - bill of information. The State agreed to dismiss count five and to not file a multiple offender bill in this case against Powell. The trial court accepted Powell’s guilty pleas, acknowledging that he reserved his right to appeal the trial court’s prior ruling on the motions to suppress the evidence and statements, under State v. Crosby. At the same hearing, Powell waived sentencing delays and the trial court sentenced Powell to six years for each count, to run concurrently and with credit for time served.
FACTUAL BACKGROUND
At the motions hearing on March 13, 2012, the State called two witnesses to testify regarding the narcotics investigation leading to the arrests of Powell and Clinton Rapp.[2]
Agent Chris Johnson of the Plaque-mines Parish Sheriffs Office testified that, in February 2011, he was involved in a narcotics investigation of Clinton Rapp. Several days prior to February 16, 2011, narcotics agents conducted a controlled buy of crack cocaine from Rapp through the use of an informant. On February 16, 2011, Agents Ryan Martinez and Adam Barrios conducted | ¡¡surveillance on Rapp. Although Agent Johnson was not part of the surveillance team, the other agents communicated Rapp’s activities to him via radio. Agents Martinez and Barrios “observed [Rapp] prowling around the Booth-ville and Venice area conducting hand-to-hand transactions with numerous people at different residence[s].” The agents observed Rapp as “[h]e would pull up, he’d meet the people outside at different residences, they’d exchange something hand-to-hand and he would pull off, very quickly.” Agent Johnson testified that, from his experience as a narcotics investigator for five years, Rapp’s activities indicated drug transactions.
While conducting their surveillance, Agents Martinez and Barrios observed Rapp conduct a transaction at the home of Jeanne Perlich, “a known crack smoker.” Agents Martinez and Barrios communicated this information via radio to Agent Johnson and Agent Charles Jianfu, who then intercepted Rapp driving northbound on LA 923 in Boothville. The agents conducted a traffic stop for improper display of a license plate and driving without a license. Agent Johnson stated, “[Rapp] was stopped the night before by Deputy Gregory Godfre and it was known that Mr. Rapp also has a suspended driver’s license.”
Agent Johnson testified that Rapp took approximately a quarter of a mile to stop and, during that time before the stop was made, Agent Johnson saw Rapp “moving around a lot in the vehicle, which is consistent with somebody trying to hide something or reach for an item or object.” When he finally stopped, Rapp “jumped *893 out of the car real quickly.” To Agent Johnson, this action indicated that Rapp was trying to distance himself from his car and did not want the agents to ^approach it. Upon approaching Rapp’s vehicle, Agent Johnson saw “a clear plastic bag containing numerous white rock like items consistent with crack cocaine which was partially stuffed in a little sleeve of the emergency break, which [was] in plain view.” The agents seized that evidence and a napkin containing white pills also recovered from the emergency brake sleeve.[3] At that point, Rapp was placed under arrest.
Agent Johnson stated that the investigation did not end at that point. During the surveillance of Rapp, the agents observed that Rapp would drive around doing his hand-to-hand transactions and then return frequently to a residence at 117 Taylor Lane in Boothville. The residence belonged to Powell’s grandmother. Agent Johnson believed the owner was also Rapp’s mother. After Rapp’s arrest, the Narcotics Division secured the residence. Agent Mike Oliver prepared the search warrant for the residence, and Agent Johnson was among those who executed it.
Agent Johnson testified that while he was arresting Rapp, other agents went to the residence on Taylor Lane to secure it until a search warrant could be procured. In order to secure the residence while the search warrant was procured, agents knocked on the door, Bernell Prout answered the door, and agents asked for everyone in the house to come outside. When Agent Johnson arrived, the other agents were standing outside with the three people who had been in the house— Bernell Prout, Harry Jones, and Cortney Powell. Agent Johnson testified that no search was performed until the warrant was procured.
|sUpon receiving the signed search warrant, the agents entered the residence and detected an odor consistent with marijuana coming from the back bedroom. Agent Johnson testified that Powell made a statement that he had a small bag of marijuana in the pocket of a pair of jeans that was on the floor in that room. In executing the search warrant, agents also located other narcotics and weapons in the same bedroom: several “white like objects consistent with cocaine” in the top left drawer of a dresser; in the top right drawer, a brown paper bag containing two bags of what appeared to be marijuana and two bags of pills consistent with Ecstasy. Elsewhere in the room, agents located eight shotguns, a pistol, and sandwich bags, consistent with narcotics packaging. All of these items were discovered in the same bedroom. Although Powell only made a statement admitting to possessing the marijuana in his jeans pocket, he and his grandmother, who owned the residence, stated that defendant was the only person residing in that bedroom.
Agent Mike Olivier, of the Plaquemines Sherriffs Office Narcotics Division, testified that during February 2011 he was involved in the narcotics investigation of Rapp and had ordered the surveillance in that case. On February 16, Agent Olivier prepared the search warrant affidavit following Rapp’s arrest. His affidavit included information provided from agents who conducted the surveillance of “137 Taylor Lane” and Rapp since early February. Agent Olivier faxed the warrant affidavit to the judge and when he received back, *894 via fax, a signed warrant from the judge, Agent Olivier delivered the signed warrant to the Taylor Lane residence.
Agent Olivier testified that, upon arriving at the residence on Taylor Lane, he saw the other narcotics agents outside of the residence. He stated he thought the | Bresidents were in the front room of the house. Agent Olivier believed that the address of the residence was 137 Taylor Lane, which he had written on the search warrant affidavit, but he acknowledged that the number 117 was on a door at the residence.
The search warrant affidavit provides the following description of the residence to be searched:
[Ljocated at 137 Taylor Lane in Venice, Louisiana, the parish of Plaquemines, occupied by Clinton Rapp. The residence is a baby blue double wide house trailer. The trailer is finished with a baby blue colored siding. The residence has Two (2) doors, One (1) facing West and One (1) facing North. There is a satellite dish mounted on the East side of the residence. The residence also has “117” located on the west side wall next to the door. The residence has a wooden porch and awning on the North side and a wooden porch under construction on the West Side. The residence has Three (3) windows facing North and Two (2) windows and a small bathroom window facing South.
The search warrant affidavit also provides the facts of the investigation offered as the probable cause for the warrant. The affidavit describes the surveillance conducted of Clinton Rapp between February 1 and February 7, 2011, by the Plaque-mines Parish Sheriffs Office Narcotics Division. It states that the agents observed Rapp leave the residence at 137 Taylor Lane, make several stops at other locations in the area wherein the agents observed Rapp conduct hand to hand transactions consistent with narcotics activity, after which Rapp would return to the residence at 137 Taylor Lane. The affidavit also describes the surveillance, observations of drug transactions, traffic stop, and subsequent arrest of Clinton Rapp on February 16, 2011.
Based on the facts provided and sworn to in the search warrant affidavit, Judge Kevin Conner signed the search warrant at 11:00 p.m. on February 16, 2011, and included the notation that he found probable cause after reading and reviewing 17the affidavit. The search warrant signed by Judge Conner ordered a search of the residence, vehicles and curtilage at 137 Taylor Lane, including safes and locked boxes, for “illegal narcotics, including but not limited to Cocaine, contraband ... monies, notes, weapons and any and all items/contraband associated with illegal narcotics.”
ERRORS PATENT
A review of the record for errors patent reveals none.
DISCUSSION
In Powell’s sole assignment of error, he argues the trial court erred in denying his motions to suppress the evidence and statements. Powell asserts there was not sufficient probable cause to support the warrant because the facts did not support a finding that narcotics would be found at 117 Taylor Lane — the correct address of the residence. Powell also contends that inconsistencies in the agents’ testimony suggest that “there is some evidence of police misconduct as to the timing of the execution of the warrant.” Based on the lack of probable cause to support the search warrant and the inconsistencies in the agents’ testimony, Powell argues that all evidence seized and statements made *895 by defendant as a result of the search should be suppressed.
The Fourth Amendment of the U.S. Constitution and La. Const. Art. 1, § 5 protect against unreasonable searches and seizures. Under Louisiana law, a judge may issue a warrant authorizing the search for and seizure of anything within the court’s territorial jurisdiction which “[m]ay constitute evidence tending to prove the commission of an offense.” La. C.Cr.P. art. 161(A)(3). A search warrant may only issue upon probable cause established to the satisfaction of the judge, supported by oath or affirmation of a credible person, and particularly describing [sthe place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. La. Const. Art. 1, § 5; La.C.Cr.P. art. 162.
The judge or magistrate issuing the warrant must “make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place.” State v. Green, 02-1022, p. 7 (La.12/4/02), 831 So.2d 962, 969 (citing State v. Byrd, 568 So.2d 554, 559 (La.1990)). “[A]n affidavit must contain, within its four corners, the facts establishing the existence of probable cause for issuing the warrant.” State v. Casey, 99-0023, p. 4 (La.1/26/00), 775 So.2d 1022, 1028; State v. Duncan, 420 So.2d 1105, 1108 (La.1982). “The magistrate’s .determination of probable cause, prior to issuance of a search warrant, is entitled to significant deference by the reviewing court and marginal cases should be resolved in favor of finding the magistrate’s assessment to be reasonable.” Green, 02-1022, p. 8, 831 So.2d at 969 (citing State v. Rodrigue, 437 So.2d 830, 833 (La.1983)). “[RJeviewing courts should interpret the affidavit in a realistic and common sense fashion,” with consideration that the “non-lawyer police officers” prepare affidavits “in the midst and haste of a criminal investigation.” Id.
Even upon a finding that the search warrant was not supported by sufficient probable cause, “the evidence seized pursuant [thereto] need not be suppressed if the officers who executed the warrant believed it was validly issued.” State v. Horton, 01-2529, p. 7 (La.6/21/02), 820 So.2d 556, 561 (citing U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Suppression is appropriate, however, in the following situations:
(1) [T]he affiant misled the magistrate by including in the affidavit misleading statements which the affiant knew were false or would have known were, false, except for reckless disregard for the truth; (2) |9the magistrate abandoned his neutral and detached role; (3) the affiant was so lacking of indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant was deficient and could not be presumed valid.
Id. (citing Leon, 468 U.S. at 914-915, 104 S.Ct. 3405). In reviewing a trial court’s determination on a motion to suppress, the trial court’s findings are entitled to great weight and will not be disturbed absent manifest error. Casey, 99-0023, p. 6, 775 So.2d at 1029; State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 19394.
In this case, Agent Mike Olivier prepared the search warrant affidavit based on facts within his own knowledge and as gathered from the reports of the other agents conducting the investigation of Clinton Rapp and the surveillance of the residence on Taylor Lane. The affidavit provides the details of the narcotics investigation of Rapp from February 1, 2011 through February 16, 2011. It sets forth *896 the following facts: 1) between February 1 and 7, and on February 16, Agents of the Plaquemines Parish Sheriffs Office Narcotics Division had conducted surveillance of Rapp, observed him leave the residence at 137 Taylor Lane, drive to several locations, make stops for approximately one to two minutes, and conduct a series of hand to hand drug transactions; 2) agents conducted a controlled buy of crack cocaine from Rapp between February 8 and 11; 3) on February 16, agents observed Rapp travel from 137 Taylor Lane to the residence of a known drug user, stay for one to two minutes, and leave, which is consistent with drug transactions; and 4) agents stopped Rapp for improper display of a license plate and, during the stop, agents observed in plain view a clear bag of rock like items.
The affidavit also particularly describes “the residence at 137 Taylor Lane” by its color, doors and windows, siding, front porch, satellite dish, and the fact that 110“the residence also has “117” located on the west side wall.” The affidavit also includes descriptions of the three vehicles, with license plate and VIN identifications, parked outside of the residence. The descriptions of the residence and the vehicles are clear and detailed.
Based on the testimony and evidence presented at the motions hearing, the trial court ruled to deny the motions to suppress and found probable cause for the charges against Powell and Rapp. Regarding the motions to suppress, the trial court did not note any insufficiency in the stated reasons for the issuance of the search warrant. The trial court only stated its concern about the discrepancy in the municipal address of the place to be searched. Before issuing its ruling on the motions to suppress, the trial court took a brief recess to research the issue of the discrepancy between the municipal address actually searched — 117 Taylor Lane — and the address specified in the affidavit for the search warrant — 137 Taylor Lane. In ruling to deny the motions to suppress, the trial court cited to this Court’s decision in State v. Brown, 09-0722 (La.App. 4 Cir. 2/10/10), 32 So.3d 939, and stated, “[y]ou have to look at the intent of the Officers in providing the numbers and why there was a difference and whether there was any intent to deceive on behalf of the Officers to this Court.”
In Brown, this Court found the erroneous address in the search warrant affidavit was, at most, an inadvertent representation which did not invalidate the search warrant. When an affidavit for a search warrant contains an inadvertent misrepresentation, reviewing courts should excise that particular information in determining whether the affidavit provided probable cause for issuance of the warrant. Brown, 09-0722, p. 23, 32 So.3d at 953, (citing State v. Fournette, 08-0254, p. 26 (La.App. 4 Cir. 7/2/08), 989 So.2d 199, 216). In this case, the trial |ncourt noted that despite any error in the street number of the residence, the warrant affidavit provided a proper description of the location to be searched with particular and sufficient detail. We agree.
The facts within the search warrant affidavit clearly support a magistrate’s finding that a fair probability existed that evidence of a crime or drugs would be found at the residence on Taylor Lane that was particularly described within the affidavit. See Green, 02-1022, p. 7, 831 So.2d at 969. We find no error in the trial court’s determination that the search warrant was valid. Powell has failed to show the trial court erred in denying his motions to suppress on the basis of an invalid search warrant.
Powell also contends the discrepancies in the agents’ testimony suggest the residence was searched prior to the issu- *897 anee of the warrant and, therefore, the search and seizure were constitutionally invalid. As support for this argument, defendant states that a report authored by Agent Johnson indicates the search occurred at 9:48 p.m. but the search warrant was not signed by the magistrate until 11:00 p.m. Defendant also contends Agent Olivier’s testimony calls into doubt Agent Johnson’s testimony, because Agent Johnson stated that the agents securing the house waited outside with the occupants until the warrant arrived whereas Agent Olivier stated that the agents were outside on the porch when he arrived with the warrant but he believes the occupants of the house were sitting in the front room of the house.
Defense counsel questioned Agents Johnson and Olivier about the timing of their arrival at the residence, the time of the issuance of the warrant, and the timing of the execution of the warrant. In questioning Agent Johnson, defense counsel pointed out that the summary report on the execution of the search warrant | ^indicated that the search was conducted at 21:48 hours, or 9:48 p.m., but the search warrant was signed at 11:00 p.m.[4] Agent Johnson testified that 21:48 was the time that the other agents arrived at the residence and secured it until the warrant was received. Agent Johnson further testified that no search was conducted until the search warrant was signed and brought to the residence. Agent Olivier, who prepared and secured the search warrant, testified that he brought the warrant to the residence and no search had been conducted prior to his arrival.
The trial court did not note any discrepancies or inconsistencies in the agents’ testimony and the record does not reveal any clear misrepresentations. “A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony.” Brown, 09-0722, p. 8, 32 So.3d at 945. Upon our review of the facts and applicable jurisprudence, and giving due deference to the findings of the trial court, we find no error in the trial court’s ruling on Powell’s motions to suppress.
The sole assignment of error has no merit.
CONCLUSION
For the foregoing reasons, we affirm Cortney Powell’s convictions and sentences.
AFFIRMED.

. 338 So.2d 584 (La.1976).

. Clinton Rapp and Powell were both arrested as a result of the execution of the search warrant at issue in this case. The State charged Clinton Rapp separately, but all parties agreed to combine the motions hearings for Rapp and Powell because the arrests and seizure of evidence in both cases involve the same search warrant and investigating officers. The minutes of the court from that hearing state, ”[o]n a joint motion, the court granted the consolidated hearings in these matters without objection.”

. Agent Johnson identified the lab report of the evidence seized from Rapp. The rock like objects tested positive for cocaine weighing 2.46 grams, and the pills were Clonazepam. Agent Johnson also identified the traffic citation issued to Rapp for improper display of license plate, suspended driver’s license, and open container.

. The record includes a copy of the signed search warrant and the return on the search warrant but it does not include any report authored by Agent Johnson as discussed by defendant. Defense counsel discusses a report with Agent Johnson during his testimony but the record does not reflect that the report was offered and introduced into evidence.